**BRITTON v. MORRIS, Road Sup'r.**

No. 6295—Opinion Filed April 11, 1916.

Rehearing Denied June 20, 1916.

.(158 Pac. 358.)

1. **Highways—Vacation—Authority of County Commissioners.**

By virtue of section 1600, subdivision 3, of the Rev. Laws of 1910, the board of county commissioners of the various counties of this state have authority to vacate highways donated by section 23 of the Organic Act.

2. **Same—Order.**

The laying out and establishment of a new road between two objective points, in such close proximity to the old road as clearly indicates an intention upon the part of the board of county commissioners to substitute the new for the old, ipso facto, vacates the old road.

3. **Appeal and Error—Review—Questions of Fact.**

In cases of purely equitable cognizance, where the parties are not entitled to a jury, this court on appeal has the power to examine the evidence, and, where the judgment of the trial court is clearly against the weight of the evidence and the law, to render or cause to be rendered such judgment as the trial court should have rendered.

(Syllabus by Hooker, C.)

Error from District Court, Washita County; James R. Tolbert, Judge.

Action by James Britton against Jess Morris, Road Supervisor of Rainey Township, Washita County. Judgment for defendant, and plaintiff brings error. Reversed, with directions.

Edwards & Beets, for plaintiff in error.

Brett & Billups, for defendant in error.

Opinion by HOOKER, C. James Britton, in his petition herein, alleges that he is the owner of the southeast quarter of section 25, township 9, north of range 17, and of the southwest quarter of section 30, township 9, north of range 16, in Washita county, Okla., and that the defendant in error, Jess Morris, as road supervisor of Rainey township in said county, is threatening to go upon his land and take possession thereof for the purpose of building a road thereon without any authority of law, and that, unless the said Morris is restrained, he will at once proceed to tear down plaintiff's fences and go upon his lands and destroy his crop, and do great and irreparable damage.

To the petition, the defendant in error, Jess Morris, filed an answer denying the allegations thereof, and further answered that he was a road supervisor of road district No. 1 in Rainey township, and that prior to the institution of this action the board of county commissioners of Washita county ordered the section line between the aforesaid properties opened for travel, and that the township board of Rainey township had directed him as road supervisor to open such road as provided by law, and that the road which he intended to open was a public road and that he intended to do nothing else but to comply with the order of the board of county commissioners to open said road in order to accommodate the public in traveling over the same.

Upon the trial of this cause the plaintiff in error introduced as witnesses the three members of the board of county commissioners in Washita county in the year 1909, and each of them testified that during the year 1909, constituting the board of county commissioners of Washita county, they had made an order changing the road between the two properties mentioned herein in manner and form as shown by an order of the board of county commissioners of date the 11th day of May, 1909. whereby it changed the public road east from the section line in the neighborhood of a quarter of a mile. They further testified that a petition requesting said change was filed with the board of county commissioners and that the township officers of Rainey township appeared before them and likewise requested the change to be made, and that the parties who owned the real estate through which the new road was to pass consented thereto, one by deeding the land and the other by receiving compensation. The evidence discloses that the old section line was at some seasons of the year impassable on account of its low, boggy condition, and that, on account of this and a certain creek, it would have been necessary to have erected bridges and to do other work upon the road in order to make the same passable at all times of the year, and that the board of county commissioners, deeming it to be to the best interests of all parties concerned, ordered a change in the location of the road.

The evidence further discloses that the new road was laid out and used and worked as a public road from 1909 up to the institution of this suit, and there is quite a conflict in the evidence as to whether the old road was abandoned by the entire public after the establishment and location of the new road; but the evidence does disclose that, for a part of the time, owing to the erection of fences and the cultivation of certain parts of the old road, the entire old road was not used by the public during a great part of the time before stated.

It is the contention of the plaintiff in error here that the establishment of the new road

between the two points, ipso facto, vacated the old road, and, inasmuch as a part of the new road had been donated by the owner of the property adjacent to the old road to whom the old road had reverted, and by reason of the fact that the landowners adjacent to the old road had erected their fences and had cultivated the old road, that the county had lost its right to occupy the ground formerly occupied by the old road, and was not entitled to open the old road for use without condemning the same in manner and form as provided by law.

To this contention, the defendant in error replied that the old road had never been abandoned, and that the rights of the public were still reserved to it, and that the board of county commissioners had the authority, whenever in their judgment it was necessary and proper to do so, to order the old road opened for the public without condemnation proceedings or paying any damages therefor.

Before entering into a discussion of this controversy, we deem it advisable to present several decisions of our own court upon this question. In the case of Arthur v. Board of Commissioners, reported in 43 Okla. 174, 141 Pac. 1, this court says:

"The right of the sovereign power to the exercise of eminent domain is inherent as an attribute of sovereignty, and the provisions of the Constitution and of the statute are merely a limitation upon that power. As to the necessity, utility, or expediency of the exercise of the power, that is a matter to be determined exclusively by the Legislature, in the absence of a Constitutional requirement that the same be submitted to a judicial tribunal; and the Legislature may delegate the right to determine the necessity for the exercise of the power of eminent domain to public officials or to private corporations to carry on enterprises in which the public is interested, and their determination that a necessity for the exercise of a power exists is conclusive."

And the third paragraph of the syllabus is:

"Where a board of county commissioners determines that the opening of a public road is necessary, that decision is conclusive upon the question of necessity."

Also, in White et al. v. Dowell, 49 Okla. 589, 153 Pac. 1140, this court says:

"The sole question for determination in this case is whether at the date of the order (February, 1910) there existed any authority in the board of county commissioners to make such order. Section 23 of the Organic Act of Oklahoma Territory is as follows: 'That there shall be reserved public highways four rods wide between each section of the land in said territory * * * But if the said highways shall be vacated by any com-

petent authority, the title to the respective strips shall inure to the then owner of the tract of which it formed a part of the original survey.'

"This reservation of lands for public highways was accepted by an act of the territorial Legislature, effective December 18, 1890, and by the state in section 2 of article 16 of the Constitution. * * * In 1909 the Legislature revised the laws of the state relating to roads and highways, and the revision is contained in chapter 32, article 1, Sess. Laws of 1909. * * * This revision as made was substituted for all former acts on that subject, and, together with the provisions concerning eminent domain, found in article 13, chapter 15, and chapter 30, Rev. Laws 1910, constitutes the statutory law in reference to these subjects. * * * The law as revised contained no provision authorizing the board of county commissioners to vacate any highway. Section 1600, Rev. Laws 1910, which was in force at that time, provides with reference to powers of county commissioners: 'They shall have power: * * * (3) to construct and repair bridges, and to open, lay out, and vacate highways.'

"It is said that this section does not apply to highways of the character involved, which were reserved by act of Congress, and the grant accepted by the state. | * * *'"

Section 23 of the Organic Act contains an expressed recognition of the fact by Congress that highways might be vacated by competent authority.

"The state, under this provision in section 23 of the Organic Act, would have the right to vacate said highway, and might and did by the third subdivision of section 1600, Rev. Laws 1910 (which was in force in 1909), delegate authority to the county commissioners to vacate highways, which would be sufficiently broad and comprehensive to include highways dedicated by section 23 of the Organic Act and accepted by the state."

Also this court in the case of Trotter v. Wood, 52 Okla. 20, 152 Pac. 600, said:

"If the section line was vacated, and another road accepted in its stead, then the county can never again acquire title to it, except by condemnation proceedings and compensating the owner, who gave other lands in exchange for it."

It must be borne in mind that the laws of 1909 became effective on March 20, 1909, (see chapter 32, art. 1, p. 504, Sess. Laws 1909), and this order of the board of county commissioners establishing the new road was made May 11, 1909. From the decisions above noted, it is clear that the board of county commissioners in May, 1909, had the authority to vacate public roads or highways, even though the same were located in the section lines. That being true, it is then necessary for us to consider whether the order

of the board of county commissioners establishing a new road between two objective points, ipso facto, vacates the old road.

The new road and the old road were in such close proximity, being only a few hundred feet apart, that it can hardly be said that it was the intention of the county commissioners to maintain the two roads as a public road, and the proof here discloses that the new road was worked as a public road, and the old road, or a part of it, practically closed to the public. The three commissioners testified that it was their intention to vacate the old road, but the order of the commissioners' court establishing the new road is silent as to any intention upon the part of the board of county commissioners with reference to the old road, but merely opens the new road along the lines designated in the order.

The following authorities are cited in support of the proposition that the establishment of a new road, ipso facto, vacates the old one· In the case of Brook v. Horton et al., 68 Cal. 554, 10 Pac. 204, the Supreme Court of California held that an alteration by competent authority of an existing road discontinues those portions of the way which *do not come within the newly assigned limits*, although no special order of discontinuance is made. Also, in the case of Commonwealth v. Westborough, 3 Mass. 406, it is held that establishing an alteration in a highway is in law a discontinuance of the part altered. In 8 Allen (Mass.) 21, Bowley et al. v. Walker et al., it is held that establishing an alteration in a highway upon a petition praying that it may be widened and straightened is in law a discontinuance of those portions of the way which do not come within the newly assigned limits, and no special order of discontinuance is necessary. In Hobart v. County, 100 Mass. 165, it is held a discontinuance of so much of the old road as is not included in the new location results from the alteration, ipso facto, without any words of the discontinuance. Johnson v. Wyman, 9 Gray (Mass.) 186.

In Commonwealth v. Boston & A. R. Co.; 150 Mass. 174, 22 N. E. 913, it is shown that the residents of the towns of C. and B. petitioned for the alteration of a road leading from B. and terminating in another road leading from C. to H., on the ground that near such terminus it was very hilly. In accordance with the petition, the county commissioners located the new road which turned off from the road to B. some distance west of the road from C. to H. and terminated in the latter road north of the former terminus. Held that the location of the new

road operated as a discontinuance of the old road, though the old road was used and repaired for several years thereafter.

"The alteration of an old road involves the discontinuance of that part of it which is altered; and, under a citation to alter a road, it is competent to discontinue [the portion] rendered unnecessary by the alteration." *Ponder v. Shannon*, 54 Ga. 188.

"The authority to alter a road is an authority to substitute a new road for the old one." Millcreek Tp. v. Reed, 29 Pa. 195.

"The very act of opening a substitute is sufficient." Closson v. Hamblet, 27 Vt. 728.

"The report of the discontinuance and the acceptance of it are therefore mere surplusage." *Goodwin v. Marblehead*, 1 Allen (Mass.) 37.

"Where it was' objected that the appointment of surveyors to lay out a new road and vacate an old one were embraced in the same return, the court held it was proper to blend the two for the reason that, if the road should be laid out as applied for, the old road must necessarily be vacated, and that there should not be separate returns in such cases; and contrary proceeding would be embarrassing and work inconvenience to the public." State v. Bergen, 21 N. J. Law, 342.

"Where the location of a new road would virtually supersede the old one, or render it useless or unnecessary, there would seem to be no objection to the practice; but, if there were no connection or relation whatever between the two roads, the better practice would be to prosecute them by separate proceedings." Vedder v. Marion Co., 22 Or. 264, 29 Pac. 619.

"Where the county commissioners, pursuant to petition, laid out a new road diverging from the old one at a certain point, but running in the same direction and terminating in the same highway at another point, it was held, there being nothing to show that the county commissioners should continue the old road between these two points, that it was discontinued." Com. v. Boston & A. R. Co., 150 Mass. 174, 22 N. E. 913.

"And under the West Virginia Code of 1868 (chapter 43, sec. 32, p. 273) it has been held that the order of the county court establishing an alteration in a road established the new route and discontinued the old." Yates v. West Grafton, 33 W. Va. 507, 11 S. E. 8.

Having reached the conclusion that the board of county commissioners of Washita county had authority to vacate the old road in question, and that the order of the board of county commissioners establishing the new road had the effect of vacating the old, it follows that the title to the old roadbed, under the law, reverted to the landowners adjacent thereto; and, under the decision above quoted, the county can never again ac-

quire title to the old road except by condemnation proceedings and compensating the owner who gave other lands in exchange for it. This evidence discloses that the plaintiff in error had placed improvements of more or or less value upon the old road, such as alfalfa, planting crops, erecting fences, and arranging his farm for the purpose of better cultivating the land under the new arrangement which would have been disturbed and molested by opening the section line, as sought by the defendant in error in this case.

We are therefore of the opinion that the trial court was in error in not granting the injunction to the plaintiff in error, and under the authority of this court, in the cases of Schock v. Fish, 45 Okla. 12, 144 Pac. 584; Wimberly v. Winstock, 46 Okla. 645, 149 Pac. 238; and Tucker et al. v. Thraves, 50 Okla. 691, 151 Pac. 598, this being a case of purely equitable cognizance, wherein the parties are not entitled to a jury, this court has, on appeal, the power to go into and examine the evidence and, where the judgment of the trial court is clearly against the law and the evidence, to render or cause to be rendered such judgment as the trial court should have rendered.

This cause is reversed, with directions to the lower court to grant the injunction prayed for by the plaintiff in error in this case.

By the Court: It is so ordered.