## HARDER et al. v. PARKES.

No. 11498—Opinion Filed May 15, 1923.

1. **Vendor and Purchaser—Sale of Realty—Offer and Acceptance.**

If the terms as offered for the sale of real estate are not accepted in the form and manner as made, or the person to whom made makes a counter proposition accepting in part the conditions of the offer and embodying new provisions, which the proposed seller does not accept, the negotiations so made do not result in a binding contract on the parties.

2. **Appeal and Error — Review of Equity Case—Reversal.**

In a case of purely equitable cognizance this court may consider the whole record and weigh the evidence, and if the judgment of the trial court is against the weight of the evidence, it may reverse and remand the cause, with directions to enter the judgment that should have been rendered in the first instance.

3. **Specific Performance—Judgment—Insufficiency of Evidence.**

Record examined, and held, that the judgment of the trial court is clearly against the weight of the evidence.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Texas County; Arthur G. Sutton, Judge.

Action by Frank Parkes against J. G. Harder and Helena Harder for the specific performance of a contract for the sale of real estate. Judgment decreeing specific performance in favor of the plaintiff and against the defendants as prayed for, and

defendants bring error to this court. Reversed, and remanded, with directions.

H. Grimstead and R. L. Howsley, for plaintiffs in error.

John L. Gleason, for defendant in error.

Opinion by STEPHENSON, C. Plaintiff commenced his action against the defendants in the district court of Texas county, on April 21, 1919, seeking to compel the defendants to convey certain lands described in the petition to the plaintiff. A copy of the contract sought to be enforced was attached to plaintiffs petition. The defendants filed their general denial. The action being an equitable proceeding was tried to the court without the intervention of a jury. Among the several provisions contained in the contract of February 10, 1919, was one to the effect that the defendants bound themselves to convey to the plaintiff the land in question, if the plaintiff should first make the payment of the consideration and perform the covenants therein set forth. The following payment and covenants were provided for on the part of the plaintiff:

(1) The payment of $1,000, or $1,200 cash; and

(2) The agreement to pay the balance of the purchase price on or before February 10, 1922, at the rate of 7 per cent interest, from the date of the contract, the interest thereon to be paid annually on or before February 10th of each year. This contract in duplicate was signed by the defendants and transmitted to the plaintiff on or about February 10th, which was in the nature of an offer to the plaintiff to sell the lands described in the contract upon the conditions set forth in the instrument. In the event the plaintiff accepted the offer he was requested to sign one of the copies of the contract and return to the defendant at Clinton, Mo. Nothing further transpired between the parties until March 22nd, following. On that date the plaintiff mailed a letter to the defendant J. F. Harder, in part reading as follows:

"I have had a contract prepared and have decided to accept your proposition on the land, and which, if satisfactory, you may sign and return with other papers to the Farmers' and Merchants' Bank of this city (Hooker), with instructions to turn over to you on payments specified."

The blank contract in triplicate enclosed with the letter contained the following provisions:

(1) The first parties are to execute warranty deed and furnish abstract of title to be placed in the bank named;

(2) The title to be examined and approved by the second party, or his agent, and after such examination and approval the plaintiff was to pay in to the bank the sum of $1,000 for delivery to the defendant, and the balance in the sum of $3,200 was to be paid on or before February 10, 1922, bearing interest at the rate of 7 per cent per annum, from the date of contract and payable annually.

The principal distinction between the offer made by the defendants to the plaintiff about February 10th, and the offer of the blank contract in triplicate transmitted by the plaintiff to the defendants about March 22nd, following, relates to the time and manner of the cash payments. In the offer by the defendants to the plaintiff, the latter was required to make the cash payment and provision for the payment of the balance of the purchase price before the defendants executed and delivered their deed to the plaintiff. The blank contract or offer submitted by plaintiff to defendants about March 22nd, following, providing for the execution of the deed by the defendants and placing in the bank at Hooker, pending the approval of the title by the plaintiff, and if the plaintiff approved the title, then the cash consideration was to be paid into the bank for transmission to the defendants. The offer of the plaintiff did not specify the time he should be allowed for examining the title.

The testimony of Harder was, in part, relating to the contract in triplicate forwarded to him by the plaintiff, as follows:

"Q. And what did you understand in regard to these three contracts that he sent you, what did you do about those? A. Well, I understood by that, that he rejected my contract. Q. And was providing for other terms? A. Yes, sir. Q. What did you do about that? A. I waited some time before I answered, then after I received a letter from him asking why I had not sent the papers, then I wrote him that as he had not accepted my contract and his contract did not satisfy me that I considered the deal now ended. Q. You didn't then understand that he had ever accepted your own contract did you, Mr. Harder? A. No, I never did."

In the ordinary and usual course of handling such matters of business through the United States mail, the plaintiff would have been expected to answer the letter of the defendants prior to March 22nd, following, if it had been his intention to accept and be bound by the offer as made by the de

fendants. The testimony of the plaintiff at the trial was to the effect that he accepted the offer of the defendants, and the blank contract in triplicate as transmitted to the defendants was intended merely to supplement the offer of the defendants, However, an examination of the offer of plaintiff, as made on March 22nd, showed that it materially changed and amended the offer as made by defendants to the plaintiff about February 10th. The letter of the plaintiff transmitting the blank contract of March 22nd, in language indicated that the defendant might accept or reject the offer as made, and there was nothing about the letter that indicated the purpose of the plaintiff to accept the offer of sale as made by the defendants about February, 10th.

Relating to the questions of offer and acceptance, this court has already established the rule to be that both parties must assent to the same thing and upon the same terms. The further rule is that the assent must comprehend the whole of the proposition as made and must be equal in its terms and extent with the offer as made, and, said assent must not qualify the offer by any new matter.

Therefore, a proposal to accept an offer embodying terms varying those produced in the offer, means a rejection of the offer as made. 13 Corpus Juris, 264; McCormick v. Bonfi's, 9 Okla. 605, 60 Pac. 296; Mooney v. Merr'am (Kan.) 94 Pac 263; Bentz v. Eubanks (Kan.) 20 Pac. 505; Osborn v. Addington (Kan.) 138 Pac. 603; National Bank v. Hall, 101 U. S. 43; 35 Cyc. 52; Seymour v. Armstrong (Kan.) 64 Pac. 612.

In reviewing the record and evidence as quoted above, we are forced to conclude that the acts on the part of the plaintiff did not amount to an acceptance of the defendants' offer to sell, as made on February 10th, 1919, and as the offer made by the plaintiff on or about March 22nd, following, was not accepted by the defendants, a valid contract was not created between the parties for the sale of the land in question from the defendants to the plaintiff. Therefore, the evidence is not sufficient to support the judgment of the trial court decreeing the specific performance and conveyance of the land in question from the defendants to the plaintiff.

Under the rule heretofore laid down by this court, in an equity case this court has the power to consider the whole record and weigh the evidence, and if the judgment of the court is against the weight of the evidence, it may render such judgment as the trial court should have rendered in the first instance. In carefully weighing the whole evidence as introduced in this cause, the weight thereof is against the judgment decreeing specific performance in this cause. Cash v. Thomas et al., 62 Okla. 21, 161 Pac. 220; Schock v. Fish, 45 Okla. 12, 144 Pac. 584; Success Realty Co. v. Trowbridge, 50 Okla. 402, 150 Pac. 898; Tucke, v Thraves, 50 Okla. 691, 151 Pac. 598; Britton v. Morris, 59 Okla. 162, 158 Pac. 358.

We recommend that this cause be reversed and remanded to the trial court with directions to enter judgment in this cause in favor of the defendants and against the plaintiff, denying specific performance to the latter.

By the Court: It is so ordered.