### RICE v. McDONALD.

No. 19948. Opinion Filed Feb. 9, 1932.

88

Humphrey & Spence, for plaintiff in error.

Hamilton, Gross & Howard, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Osage county in favor of the defendant in error, the defendant in the trial court, against the plaintiff in error, the plaintiff in the trial court. Hereinafter the parties will be referred to as plaintiff and defendant. The action was for specific performance of an alleged contract for sale of real estate. The plaintiff asserted that the defendant had contracted to sell him certain real estate and that she had refused to make the conveyance thereof in conformity with the provisions of her contract.

The trial court found that the defendant wrote the letters and sent the telegrams offered in evidence and upon which the plaintiff relies, together with the letters written and the telegrams sent by him to show the contract sought to be specifically enforced.

It is admitted that the defendant was the owner of the southwest quarter section 28, township 27 north, range 6 east, in Osage county, Okla., and that the land was adjacent to the town of Shidler, Okla.

We will set out the correspondence consisting of letters and telegrams which are relied upon by the plaintiff to establish a contract, and, for the purpose of brevity, we will omit therefrom portions thereof which we do not consider to be material to a discussion of the issue presented.

Under date of December 23, 1926, the plaintiff wrote the defendant as follows:

"We are planning to build a church house for our congregation, at Shidler, Okla., and you happen to own the location we want.

"It is just west of the north end of Shidler, and is the east half of the east half of the southwest quarter of section 28, Osage county, Okla.

"This location is now held under an oil & gas lease by the Gypsie Oil Company, but said lease will no way interfere with out (sic) plans as the territory is dry.

"I am authorized to offer you $1,000 for said location, providing a deed can be had.

"If this matter interest you, please answer by return mail, that we may know how to make our plans."

In response thereto he received from the defendant a letter, the contents of which he described as follows:

"In that reply she said she had had correspondence with several parties about Shidler wanting to purchase certain lands, and she positively would not consider anything less than $200 per acre for those lands. That is about all it contained."

The plaintiff's letter was an offer to buy 40 acres of land for $1,000. It was sent by the plaintiff from Shidler, Okla., to the defendant at Alhambra, Cal. The defendant's answer was that she would not take less than $200 per acre for the land described in the plaintiff's letter.

Under date of January 10, 1927, the plaintiff wrote the defendant as follows:

"Yours of January 6th received. My, but you gave us a jolt when you said $200 for land that we were expecting to buy for $25. But you did answer and you did name a price, which shows that you are a good sport any way. Of course $200 per acre is away above the economic value of this land, and land cannot be handled at that figure, unless it be in small parcels for development purposes. It is possible that I might handle a small amount—say, ten acres, which would be surveyed and cut up into lots and sold to the highest bidder. If these went off all right, then we could try another ten.

"So, just to show you that I am a good sport, I am going to offer you $2,000 for a narrow strip along the east side of this 40, which will give me one tier of lots. This will give me a location for my church and the remainder will be platted into lots and offered for sale. I believe I can sell lots enough to pay for the land leave my church location. So, if this matter interests you, please let me know, and I will have a deed filled out with the correct description, and forward to you for your and your husband's signature. You can then forward the deed to the Shidler National Bank, with instructions for them to deliver to me when I have deposited $2,000 to your credit. You can then check it out at your convenience."

The offer therein made was materially different from that made in his first letter. It was $2,000 "for a narrow strip along the east side of the 40," ten acres. The plaintiff testified that he received a letter from the defendant in which he said she asked for a description of the ten acres of land that he wished to purchase, and that she stated that she would not take $200 an acre for ten acres and that if she sold ten acres she wanted $300 an acre for it.

Under date of January 21, 1927, the plaintiff wrote the defendant as follows:

"Yours of the 16th at hand and note that you want to know the exact location of the land in which I am interested. If you will refer again to my letter, you will find the information you are looking for. The

two of Shidler occupies two quarter sections, one of which is the southeast quarter of section 28, and constitutes the north end of Shidler; the strip under consideration is a strip off the east side of the southwest quarter of section 28, and lies just outside of the town of Shidler. This is two blocks west of Cosden, the main street of Shidler. However, I might say that I learned a day or two ago that the Gipsy Oil Company holds a surface lease on this quarter. If this proves to be correct, and the oil company is unwilling to relinquish their exhibit 'H2' JMH 5/28 lease, I shall not be interested in this property. But, if we can get this lease removed, I think I shall be able to handle it at the figure mentioned. At least I will undertake the first ten acres.

"Enclosed you will find a plat which shows the exact location of this strip."

It will be noted that the description of the land sought to be purchased therein contained is "a strip off the east side of the southwest quarter of section 28." He testified that in answer to that letter he received a telegram from the defendant as follows:

"Decided to show Shidler property if you still want ten-acre strip discussed at $2,000 cash per wire me at once as have other buyers."

That telegram was not an acceptance of any offer that had been made, and whether the word "show" therein should have been "sell" is immaterial, for whether she had decided to show the property or to sell the property, she did not thereby accept any offer that had theretofore been made to her, for she thereby injected into the correspondence a new element, to wit, that of "cash," a thing that had not theretofore been discussed. If it be considered as an independent offer, it was an offer to sell the ten-acre strip that had been discussed for $2,000 cash for immediate acceptance.

Under date of March 23, 1927, the plaintiff wired the defendant as follows:

"Wire received money ready sending deed with description to-day will send money when deed and abstract approved."

Therein he injected into the correspondence a new element, and that telegram was not an acceptance of the offer made, if one was made by the defendant, and it changed the offer theretofore made by the plaintiff, for thereby he required an abstract to be approved before the money was paid for the deed, a thing not theretofore mentioned in any of the correspondence. On the same date the plaintiff wrote the defendant as follows:

"Replying to your telegram received to-day am enclosing deed with correct description of the 10 acres of land referred to in your message.

"You will notice that this description starts at a point 34 ft. west of the N. E. corner of ¼ sec. this coincides with the property line on the west side of Gypsey street of Shidler, Okla., thus making the deed cover exactly ten acres of land.

"If you and your husband will sign the deed before a notary public and return the deed to any bank in Ponca City or Pawhuska with instructions to the bank to have abstract brought to date on this land and as soon as I have abstract examined will immediately pay the amount called for in deed."

That letter injected into the correspondence a new theory. Theretofore the references to the land had been as to the governmental survey, but therein the plaintiff commenced his description "at a point 34 ft. west" of the governmental survey corner. In other words, he was seeking ten acres exclusive of the highway, while theretofore the highway was included within the ten acres described by him. He also injected into the correspondence by this letter the question of the defendant having an abstract brought to date and making the sale dependent upon an examination of an abstract.

Thereafter the defendant wired the plaintiff as follows:

"Received higher offer from other Shidler resident my final price is three thousand cash property to start from section line and not thirty four foot back sent same answer to other man if you want it better wire immediately."

Thereby she rejected all former offers and made a new offer of $3,000 cash for the ten acres "to start from section line and not 34 foot back."

Upon receipt of the telegram from the defendant, the plaintiff wired her as follows:

"Your wire of 28th received your message of March 21st offered to sell the ten acres discussed for $2,000, I wired my acceptance of your offer which constitutes a contract in law have taken possession and will expect you to abide by the contract."

It is evident from the record that there was no contract shown by the evidence in this case. The trial court did not err in so holding. At no time was the correspondence sufficient to show a contract between the parties.

The correct rule of law is stated by this court in Harder v. Parkes, 91 Okla. 16, 215 P. 609, wherein this court held:

"If the terms as offered for the sale of

real estate are not accepted in the form and manner as made, or the person to whom made makes a counter proposition accepting in part the conditions of the offer and embodying new provisions, which the proposed seller does not accept, the negotiations so made do not result in a binding contract on the parties."

The judgment of the trial court is affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur.

Note.—See under (1) 6 R. C. L. 599 et seq.; R. C. L. Perm. Supp. p. 1769; 27 R. C. L. 323 et seq.