BARTHOLOMEW v. CLAUSEN.

No. 27398. Oct. 19, 1937.

Ernest F. Jenkins and Thos. A. Higgins, for plaintiff in error.

Wilcox & Swank, for defendant in error.

PHELPS, J. This was an action for specific performance of an alleged contract of sale of mineral rights, brought by the vendee against the vendor. The judgment was for defendant, and the plaintiff appeals. The principal contention of the plaintiff is that certain correspondence exchanged between the parties constituted a contract of sale, while the defendant denies that it did, and also contends that the plaintiff is prevented from maintaining the action by operation of the doctrine of laches.

The defendant owned 160 acres of land in Payne county, Okla., but lived in the state of Iowa. The plaintiff lived in Payne county. The plaintiff desired to purchase all of the royalty of 40 acres of the defendant's land or an undivided one-fourth of the royalty covering the entire 160 acres. On April 26, 1935, the plaintiff addressed a letter to the defendant, in Iowa, telling him that he wanted to buy royalty and asking the defendant to make an offer. Thus began the negotiations. From that date until June 24, 1935, the correspondence continued, during which period 11 letters were written between the parties, including one letter from the defendant to a bank at Stillwater which was serving as agent of both parties. These are the letters which plaintiff claims constituted the contract. We have thoroughly considered each of them, and all of them together, and have come to the conclusion that it is necessary to copy parts of but four of them in this opinion. The question is whether there was ever a complete meeting of the minds of the parties, such as is necessary to constitute a contract by exchange of letters.

On May 13, 1935, after several letters had been written between the parties, the defendant replied to the plaintiff that he would sell his royalty on the southwest 40 acres for $2,000. On May 22, 1935, the plaintiff answered that letter, writing:

"I am accepting your royalty at $50 per acre or $2,000 for all the royalty under the southwest 40 acres. I will mail papers through the bank to you at once with instructions. Please sign and return at once."

(There had been no mention, so far, of the defendant's furnishing the plaintiff any abstract of title.) Pursuant to the above letter the plaintiff on the next day, May 23, 1935, sent the defendant two mineral deeds, for the defendant to sign, and the grantees therein named were parties other than the plaintiff, an additional point which the defendant argues as barring the plaintiff from the right to specific performance, but which we need not decide. Accompanying the deeds he enclosed a draft on himself for the defendant to sign. This draft contained certain conditions, among which was that the defendant would forward to the plaintiff a complete abstract of title to the land. In the same envelope the plaintiff inserted a letter to the defendant, in which he said:

"You will have to furnish an abstract or a supplement from the date of the last certificate on the one the company has who holds the lease. If you know who made the last abstract you can write them and have them to make a supplemental from their records, or write me authorizing me to have it done for you and I will hold it out of the draft or mail you a statement."

The above letter, which was the one with the "instructions" mentioned by the plaintiff in his letter of May 22d, was a departure from the offer of defendant of May 13, 1935, because in that offer the defendant had made no suggestion concerning the furnishing of an abstract. Thus the plaintiff, in the letter which he says completed the contract, imposed a new condition which had to be accepted by the defendant before it could be said that there was a complete meeting of the minds.

The plaintiff contends that said meeting of the minds was accomplished by the act of the defendant in signing the drafts, with the aforesaid provisions therein to the effect that defendant should furnish an abstract. But this overlooks the fact that when the defendant signed the drafts, and forwarded them to the bank in Stillwater, which bank by the terms of the draft was made the agent of both parties, the defendant enclosed a letter to said agent, in the same envelope with the drafts and the deeds, wherein he instructed the agent as follows, under date of May 25, 1935:

"As to said abstracts the letter of Mr. Bartholomew suggests that a supplement can be secured from the abstracter who certified to the last continuation secured and we prefer such a continuation to be secured for the grantee and you are authorized to secure the same; **providing** the expense thereof is small, if it runs into any considerable sum, we would prefer that you first communicate with us, as we are not willing to expend any fancy money to secure any abstracts, at these figures."

Since the bank was concededly the agent of both parties, and since the plaintiff had suggested that he himself be authorized to complete the abstract, and testified that he called at the bank upon receipt of the aforesaid letter, and knew of the terms thereof, we think it is obvious that the defendant did not unconditionally agree to furnish an abstract to the plaintiff. Though the draft which was prepared by the plaintiff and sent to the defendant for signature did contain a stipulation to that effect, the letter which defendant sent to plaintiff or plaintiff's agent, in the same envelope with the drafts, contained the reservation that if the cost of preparing the supplement should amount to any considerable sum, there would need be further correspondence, because the defendant would not be willing "to expend any fancy money to secure any abstracts at these figures."

The president of the bank testified that as soon as the letter from defendant was received, enclosing the drafts and the deeds, he notified the plaintiff and that the plaintiff came into the bank and examined the papers; that he told the plaintiff then that plaintiff "would have to rustle this abstract business" because the bank "wouldn't take the responsibility to order an abstract on the advice that he received in that letter."

The aforesaid letter of the defendant to the bank was dated May 25, 1935. Neither the bank nor the plaintiff ever did anything to obtain completion of the abstract. This is partly explained by the fact that on June 10, 1935, plaintiff wrote the defendant that it would not be advisable for plaintiff to purchase royalty under 40 acres, because of the fact that the lease covered the entire 160 acres, and that he would prefer purchasing an undivided one-fourth interest under the entire 160 acres, instead of the entire royalty interest under 40 acres. The defendant replied to the plaintiff, refusing to agree to the suggested change, and gave plaintiff until June 19th to accept the deeds and honor the drafts. This was in a letter dated June 14, 1935.

The plaintiff testified that on June 17, 1935, he wrote another letter to the defendant, further demanding an abstract, but the defendant denied receiving any such letter, which created a question of fact (Keeling v. Travelers Ins. Co., 180 Okla. 99, 67 P. (2d) 944), and the trial court evidently believed the testimony of the defendant. Under the rules applicable to review, we must therefore assume that no such letter was written or received. Afterwards, upon demand of the defendant, the bank returned the deeds to him.

There are still other facts and circumstances in the case which negative the idea that the minds of the parties met, unconditionally and absolutely, at any instant during the negotiations. We think it unnecessary, however, to recite those events, for it is apparent that in the letter of May 22, 1935, written by plaintiff to defendant, the plaintiff did not unconditionally accept the offer of defendant. He wrote "I am accepting," etc., "and am mailing papers through the bank to you at once **with instructions.**" It therefore appears that compliance with the instructions which the plaintiff sent the defendant constituted a

part of the plaintiff's "acceptance" of defendant's offer. When we examine those instructions we find that an entirely new condition was imposed, namely, the furnishing of an abstract. Thus plaintiff's letter of May 22d was not an unconditional acceptance, but was in part a counteroffer, and could not serve as a binding "acceptance" until and unless the defendant should in turn unconditionally accept the new condition. It is said that he signed the drafts, incorporating the promise to furnish the abstract. But he sent the drafts to the bank, not to the plaintiff, and at the same time he instructed the bank, which was plaintiff's agent as well as defendant's, that he would not go through with the deal if the cost of completing the abstract should prove too much. It is entirely immaterial from a legal viewpoint whether as a matter of fact the cost of completing the abstract would have been much or little; the fact remains that the defendant did not unconditionally accept the conditions sought to be imposed upon him by the plaintiff, in the matter of completing the abstract, nor was that feature of the attempted contract ever finally agreed upon.

A well was being drilled near the property. The plaintiff let the deeds, the drafts, and all the papers remain in the bank until after a producing well had been brought in, and then filed this action for specific performance. The defendant contends, and the plaintiff denies, that this in itself was sufficient basis for the judgment, by operation of the doctrine of laches, but we need not discuss that question.

A contract by correspondence is not complete until the communications have passed beyond the state of tentative negotiations. If the acceptance imposes new conditions, it does not seal the contract, for the offerer may not be willing. His inclination to enter into the contract may be so weak that the imposition of even the slightest additional burden upon him, in the form of new conditions contained in the acceptance, would cause his decision not to make the contract at all. Thus, if the acceptance is conditional, it is not an acceptance, but is in reality a counteroffer, 'and no contract is made until the new condition has been accepted by the original offerer, and it in its own turn must be accepted unconditionally. The acceptance, whether it be of the original offer or of new matter embodied in the would-be acceptance, must comprehend the whole of the proposition as made, and must not qualify the offer by any new matter.

The case is governed by the general rule of law stated in the first syllabus of Harder v. Parkes, 91 Okla. 16, 215 P. 609:

"If the terms as offered for the sale of real estate are not accepted in the form and manner as made, or the person to whom made makes a counter proposition accepting in part the conditions of the offer, and embodying new provisions, which the proposed seller does not accept, the negotiations so made do not result in a binding contract on the parties."

See, also, Rice v. McDonald, 155 Okla. 87, 8 P. (2d) 39; Halsell v. Renfrow, 14 Okla. 674, 78 P. 118, 2 Ann. Cas. 286; Heacock v. Kniesley, 101 Okla. 135, 224 P. 184; Swanson v. McCall, 138 Okla. 67, 280 P. 427; Atwood v. Rose, 32 Okla. 355, 122 P. 929; Smalley v. Bond, 92 Okla. 178, 218 P. 513; Day v. Ferguson, 129 Okla. 22, 263 P. 126; Taylor v. Hixon, 111 Kan. 240, 206 P. 872; National Bank v. Hall, 101 U. S. 43, 25 L. Ed. 822; 13 C. J. 264, 298; 66 C. J. 520, and cases cited.

In the absence of a provision in a contract of sale of real property that the vendor will furnish the vendee with an abstract of title, he is under no obligation to furnish such abstract. 1 R. C. L. 89; Easton v. Montgomery, 90 Cal. 307, 27 P. 280, 25 Am. St. Rep. 123; State v. Grimes, 29 Nev. 50, 84 P. 1061, 5 L. R. A. (N. S.) 545; Carr v. Roach, 9 N. Y. Super. Ct. (2 Duer. 20); Baker v. Howison, 213 Ala. 41, 104 So. 239, 52 A. L. R. 1452; Annotation at 52 A. L. R. 1460, 1462.

The finding and judgment in this case were general. On the basis herein discussed, the judgment is correct, and the rule is that if a general finding and judgment are supportable upon any ground, the judgment should be affirmed. It is therefore unnecessary to discuss the applicability of the doctrine of laches to this case.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and CORN and HURST, JJ., concur.