No. 16,013.

SMITH *v.* DES MARTEAU ET AL.

(199 P. [2d] 1006)

Decided November 1, 1948. Rehearing denied November 29, 1948.

Mr. Arthur C. Gordon, Mr. J. Woodson Railey, Mr. St. George Gordon, for plaintiff in error.

Mr. Donald T. Horn, Mr. Wilkie Ham, Mr. Douglas McHendrie, Mr. Pierpont Fuller, Jr., for defendants in error.

*In Department.*

Mr. Justice Jackson delivered the opinion of the court.

We refer to the parties to this litigation by name or as they were designated in the trial court.

Plaintiffs Des Marteau and Rountree, as real-estate agents representing an undisclosed principal, brought suit June 29, 1945, asking specific performance of an alleged contract whereby defendant Smith agreed to sell a quarter section of land in Prowers County, Colorado. Nearly two years later, namely, May 29, 1947, an amended complaint was filed in which Walter S. Neill was made a third party plaintiff. In this amended complaint it was alleged that the plaintiffs Al W. Des Marteau and H. E. Rountree were the agents of the plaintiff Walter S. Neill, and authorized to enter into the contract thereinafter mentioned. At the conclusion of a trial to the court, judgment decreeing specific performance was entered in favor of plaintiff Neill and against defendant. The court also dismissed with prejudice the complaint of the other two plaintiffs Des Marteau and Rountree. The evidence on which the trial court based its judgment consisted of the following correspondence:

"February 1, 1945.

"Mrs. Alice E. Dodge Smith,
 1601 Sherbourne Drive,
 Los Angeles, Calif.

"Re: NW¼ 19-24-41

"Dear Mrs. Smith: —

"We have a client that wishes to buy the above described real estate, and offers $1600.00 net to you for same, with merchantable title and abstract showing same. He will allow you to reserve one-fourth of the minerals for twenty years or one-half for fifteen years.

"We are enclosing you herewith our check for $160.00 being one tenth the proposed purchase price, as faith and down payment on same, and in the event that you accept of this offer, you cash the check and send us your abstract of title for extension. When the abstract shall have been extended and accepted as merchantable we will forward you a deed for signing and instructions to have same sent to a local bank for the payment of the balance of $1440.00 less the cost of extending the abstract and the revenue stamps.

"In case that you do not accept this offer you may just return the check to us in the self-addressed envelope herein enclosed.

"This is the highest offer that we have ever had made on land in grass in this part of the country, and it looks to us like a mighty good chance to sell.

"Very truly yours
"H. E. Rountree
"With: A. W. Des Marteau."

"1601 S. Sherbourne Drive, Los Angeles 35, California.
"Feb. 12, 1945.

"Mr. H. E. Rountree,
 Syracuse, Kansas.
"Dear Sir:

"Your letter and check received. I should have an-

swered sooner, but I have been out of the city for several days. As I am home today will answer your letter.

"I received word from the Lamar office that there are no prior taxes unpaid on my NW ¼ 19-24-41 and as far as I know there is nothing against the quarter, for I am the original owner and I have always kept the quarter clear. Today I sent a Cashier's Check to pay the taxes on the quarter for 1944-45, that is due in April.

"I have had a number of inquiries in regard to selling the quarter, but I gave no attention to the inquiries for I had planned to hold the quarter, as I keep posted about that section of the country and friends tell me land values and leases have gone up, and they had been offered as high as $12.00 an acre for quarters such as mine. With the future outlook of that country I feel that the price offered is low.

"We recently sold one quarter for a little less, (but it was not so well located, as this quarter is on the highway), but the quarter was sold to settle an estate, and we retained an undivided one-half interest in all mineral and oil rights, etc. similar to what I am writing you. I would not sell at any price unless it was understood and agreed that I retain an undivided one-half interest in all the rights pertaining to the leasing and production of oil, etc.

"Following the description of the land in the deed I would want it to read like the following: Excepting therefrom an undivided one-half interest in and to all of the Oil, gas, and other hydro carbons, and all associated substances and other minerals of every kind and character, in, on and under said land, together with all and singular rights and appurtenances thereto in any wise belonging, with the right of ingress and egress and possession at all times for the purpose of exploring, mining, drilling and operating for said oil, gas, other hydrocarbons, and all associated substances and other minerals, and removing the same, and the maintenance of facilities and means necessary or convenient for explor-

ing for, producing, storing, treating and transporting said oil, gas, other hydro carbons and all associated substances and other minerals.

"I am holding your check until I hear from you if you wish to buy under such conditions as I have stated, and if we can come to satisfactory agreements, and we wish to put the deal through, you could look after the abstract, as you are in a better position to do so than I am from here, and if we decided to put the deal through, you can make arrangements to pay the $1440 balance, net to me.

"Otherwise, if conditions are not satisfactory between us in carrying out the deal, I will return the check.

"Very truly yours,

"Alice E. Dodge Smith."

"February 16, 1945.

"Alice E. Dodge Smith,
1601 S. Sherbourne Drive,
Los Angeles 35, Calif.

"Re: NW ¼ 19-24-41

Prowers Co. Colo.

"Dear Mrs. Dodge: —

"We have your letter offering to take the $1600.00 with you provision of retaining one half of the mineral rights for a term of twenty years time.

"We have drawn the deed with this provision and sending you here with and is far as we can draw the deed, until we have received your abstract and have same extended, and find just how the names should appear.

"If you will send us the abstract for extending and examination we will have this done and instruct you how to have the deed completed, or draw another deed like this and send you to execute. When same is in due form showing merchantable title, we will ask you to forward it to the First National Bank of Syracuse, through your own bank for the collection of the bal-

ance of $1440.00 less the cost of abstract and the $1.65 revenue stamps thereon.

"I believe this meets the only difference in our offer to you, and complys with your counter offer.

"Very truly yours,
"H. E. Rountree
"With: A. W. Des Marteau."

"1601 S. Sherbourne Drive, Los Angeles 35, Calif.

"March 12, 1945.

"Mr. Al W. Des Marteau, Realtor,
   and Mr. Rountree,
  Syracuse, Kansas.
"Dear Sirs:

"I have been busy and out of the city for some days, I had intended answering at once but being out of town had to neglect doing so. I came home Saturday night, and found your telegram at the door.

"The way you wrote up the deed for a twenty year lease, I am not selling the land at any price with a term limit for the undivided one-half oil and mineral rights, etc.

"I would not limit myself or assigns to any time limit, and I would not make a sale of the land unless I retained the undivided one-half of the oil and mineral rights indefinitely or forever. You are there and could soon get the information regarding the abstract. The sale would have to be $1600.00 net to me.

"Under the terms you wrote up the deed, I am not interested in selling under those conditions, so I think it best to return the check in this letter to Mr. Rountree.

"I am keeping in close touch with that section of the country.

"Very truly yours,
"Alice Dodge Smith."

"March 19, 1945

"Alice Dodge Smith,
  1601 S. Sherbourne Drive,
  Los Angeles, Calif.

"Re: NW¼ 19-24-41

"Dear Mrs. Smith:—

"We are this date writing the buyer of the above land, to see if he will accept with a perpetual reservation of the minerals.

"Just as soon as we hear from him, we will advise you.

"Very truly yours,

"H. E. Rountree
"With: A. W. Des Marteau."

"March 21, 1945.

"Alice Dodge Smith,
  1601 S. Sherbourne Drive,
  Los Angeles, California.

"Re: NW 19-24-41

Prowers County.

"Dear Madam:

"We have contacted the buyer and he is accepting the land with one-half of the minerals reserved for all time, at $1600.00 net to you.

"We are enclosing you a blank deed that you can have filled out just as the one I sent you, excepting the mineral is perpetual instead of twenty years.

"We are also returning the $160.00 check, and you will please send the deed and abstract to the First National Bank of Syracuse, Kansas, for collection of the balance of $1440.00 less the revenue and cost of extending the abstract of title. We will be ready to close the sale just as soon as we get your abstract extended and examined and approved as merchantable.

"We [You] speak if [of] the idea that we are here and can check the title, titles cannot be checked without the abstract of title.

"We hope that this makes everything settled now as per your previous letter.

"Very truly yours,

"With: A. W. Des Marteau."

"1601 S. Sherbourne Drive, Los Angeles 35, California.

"April 24, 1945.

"Mr. H. E. Rountree,

(with Mr. Al W. Des Marteau, realtor)

Syracuse, Kansas.

"Dear Sir:

"I have been doing some corresponding regarding my NW¼ 19-24-41

"I have found my title is clear as I knew it is, and I have information the Granada and Holly Irrigation District has been dissolved and that there are no liens on the land on account of this action and the fact that my land is in the Webb Soil Conservation District, there are no land use regulations or anything relative to the district that would have any bearing on the land.

"I went to our bank to see about the deal, and the bank here would not notarize such a deed, as they said it would not be a complete deed, as the name or to whom title is to be conveyed is not in the deal. They said it was incomplete deed, as it does not give name of buyer or to whom it may be reconveyed, and as it is not legal, they would not notarize it.

"Very truly yours,

"Alice E. Dodge-Smith."

"April 28, 1945.

"Alice E. Dodge Smith,
 1601 Sherbourne Drive,
 Los Angeles 35, Calif.

"Re: NW 19-24-41
Prowers County.

"Dear Mrs. Smith:—

"In answer to your letter of the 24th wish to advise that you may insert the name of Walter S. Neill, Prowers County, Colo. as grantee.

"It is necessary that you send your abstract of title to the bank along with the deed, with instructions to bank to deliver the abstract for examination of the title and the deed upon the payment of the balance due of $1440.00.

"As in previous letter, these are to be sent to the First National Bank of Syracuse, Kansas.

"Very truly yours,

"With: A. W. Des Marteau."

"June 19, 1945.

"Alice E. Dodge Smith,
 1601 Sherbourne Drive,
 Los Angeles 35, California.

"Re: NW 19-24-41
Prowers County

"Dear Mrs. Smith:

"We have postponed writing you from week to week concerning the above described real estate which our client purchased of you through this office as per a letter of March 21, 1945.

"We believe that sufficient time has elapsed so that all necessary papers should have had sufficient time to get around. Consequently, we must insist that your abstract of title and necessary papers be forwarded so that this transaction can be completed according to the

correspondence we have had back and forth with you. We arrived at a very definite understanding about the purchase of this land and your offer to sell was accepted.

"We wish to assure you that we wish to co-operate with you in this matter and we hope you will do the same.

"Very truly yours,
"Des Marteau & Montgomery

"AWD:mw"                              "By

"George W. McDill
Attorney at Law,
445 Wilcox Building,
Los Angeles 12, Calif.

"June 25, 1945.

"Mr. Al W. Des Marteau
 Realtor
 Syracuse, Kansas
"Dear Sir:

"Mrs. Alice E. Dodge Smith has consulted me with reference to your correspondence with her regarding sale of her land in Prowers County, Colorado. It appears that her offer was to sell at $1600.00 *Net* to her —in other words, the buyer to pay all expenses, escrow, abstract, etc. As these terms apparently are not acceptable, Mrs. Smith has decided to withdraw her offer and this is notice to that effect, and she will keep the land.

"Accordingly I am herewith returning check of H. E. Rountree for $160.00 heretofore sent her.

"Very truly yours,
GWM/MH                    (Sgd)  Geo. W. McDill"

Besides the foregoing ten letters, the only other evidence was a stipulation that an abstract of title covering the disputed quarter section would cost $12.50.

In the trial court it was urged that no agency between Neill as the buyer, and his real-estate agents Des Marteau and Rountree is shown. The trial court made a finding that Des Marteau and Rountree were the duly authorized agents of Neill and as such were authorized ·to enter into the sale and purchase contract.

Counsel for defendent have argued their seven specifications of points under six headings, and these in turn appear to be contained in the two questions: First, whether there was such a meeting of the minds of plaintiff Neill and defendant Smith as to establish a definite contract which could be enforced specifically; and second, if so, whether the requirements of such an agreement make it sufficient under our statute of frauds. On this second point counsel for both parties have called our attention to conflicting authorities, each arguing that those which support their position should be followed. We do not discuss this point further, however, because we believe that a resolution of the first question will be determinative of the case.

As to whether there was a meeting of the minds of the parties, counsel for defendant contend that the letters amount to mere negotiations and that any offer made by defendant was withdrawn before acceptance by Walter S. Neill and before suit was brought by him; it also is argued that defendant never offered or agreed to sell to Walter S. Neill.

It will be noted from the correspondence that. the two real-estate agents took the position that their letter of March 21 constituted an acceptance by them in behalf of their principal of the defendant's terms. Counsel for the plaintiffs concur in this position when they state in their brief, "At this point the minds of the parties met and a binding contract was created. The contract was to sell a quarter section of land, which was identified, for $1,600 net to Mrs. Smith as that expression .had been defined in previous correspondence subject to a perpetual reservation of one-half of the min-

eral rights." We cannot agree with this contention. We do not believe that the phrase, "$1600 net to me [Mrs. Smith]," had been defined by the contracting parties to mean the same thing. Up to and including that time it definitely appears that to the plaintiffs it meant $1600, less the cost of a new abstract, or extending a presently existing one, together with the revenue stamps; whereas it is a logical interpretation of Mrs. Smith's letters that to her "$1600 net," meant $1600 to her after all her expenses in connection with the transaction were paid. We agree with the contention of counsel for the defendant that the letter dated March 21 from Des Marteau and Rountree does not constitute an acceptance of an offer. Counsel for defendant, proceeding in their argument, state that Mrs. Smith never did accept the terms contained in that letter, in that she refused to sign a blank deed and indicated that she wanted to know the name of the prospective buyer.

Counsel for plaintiff maintain that, even accepting opposing counsel's theory, the letter of April 28 from Des Marteau to Mrs. Smith finally shows a meeting of the minds of the negotiating parties. The name of Walter S. Neill, Prowers county, Colorado, had been supplied as the name of the grantee, and Mrs. Smith was instructed to send her abstract of title to the bank together with the deed, with instructions to the bank to deliver the abstract for examination of title and the deed upon the payment of the balance due of $1440. As directed in a previous letter, these were to be sent to the First National Bank of Syracuse, Kansas (through the agency of her bank in Los Angeles). But here again the agents have made no clarifying statement as to who should pay the cost of the abstract and revenue stamps. On those points they made no change from their previous offer. We may not infer that they agreed to assume those expenses, after noting the previous exchange of letters in which the agents, by admission of counsel, misunderstood the defendant in the matter of the min-

eral reservation so that it took three letters to elucidate that matter rather than only one. We gather from the briefs, if not from the record, that the negotiating parties were not aware of the cost of a new abstract, or of extending an existing one, at the time of the negotiations.

In *Bartholomew v. Clausen*, 181 Okla. 88, 72 P. (2d) 718, it was held, as stated in paragraph 2 of the syllabus: "Where an owner of real property offers to sell at a stated price, and the proposed buyer replies, stating that he will buy at that price, but that the owner must furnish an abstract of title, such requirement is a material condition making the attempted acceptance ineffectual in the absence of the owner's agreement to furnish the abstract."

Likewise in California there was held to be no contract where there was an acceptance of the price named by the vendor, but there was added the stipulation that the vendor was to furnish a certificate of title. *Lambert v. Gerner*, 142 Calif. 399, 76 Pac. 53. A like principle is announced in *Rice v. McDonald*, 155 Okla. 87, 8 P. (2d) 39, in which the court in turn approves the rule of law stated in *Harder, et al. v. Parkes*, 91 Okla 16, 215 Pac. 609. A note, 66 C.J. 524, sets forth the rule thus: "An attempted acceptance of an offer to sell is ineffectual where it requires as an additional term that the vendor go to the expense of furnishing an abstract of title, thus affecting the net amount the vendor would receive for the land." In support of that statement the following four cases are cited: *Johnson v. Fecht*, 185 Mo. 335, 83 S. W. 1077; *Ness v. Larson*, 41 N. D. 211, 170 N. W. 623; *Richards Trust Co. v. Beach*, 17 S. D. 432, 97 N. W. 358; *Stearns v. Clapp*, 16 S. D. 558, 94 N. W. 430.

In our opinion in *Mestas v. Martini*, 113 Colo. 108, 155 P. (2d) 161, we quoted with approval the following paragraph from *Riverside Co. v. Sawyer*, 24 Colo. App. 442, 134 Pac. 1011: "It seems to be a well-settled rule with reference to suits for specific performance that

the contract should not only contain all the material terms necessary to make a complete and legal contract, but that each one of the terms should be expressed in a sufficiently exact and definite manner that a court may, with reasonable certainty, enforce the specific performance of it."

Adopting and applying the principles announced in the foregoing cases, we believe the judgment of the trial court should be, and it hereby is, reversed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HILLIARD concur.