(February 13, 1913.)

ADA E. JARRETT, Respondent, v. D. D. PROSSER et ux., Appellants.

[130 Pac. 376.]

CONTRACT—EVIDENCE—CONTRADICTORY CONTRACT—VARIATION OF CONTRACT—FINDINGS.

1. Where parties have entered into a contract or agreement which has been reduced to writing, in the absence of fraud or mistake, if the writing is complete upon its face and unambiguous, parol evidence is not admissible to contradict, vary, alter, add to or detract from the terms of the contract; but this rule does not apply where it appears from the evidence that the agreement was a mere informal memorandum, incomplete on its face and not intended by the parties to exhibit the whole agreement, but merely to define some of

its terms. The writing is conclusive as far as it goes, but such parts of the actual agreement as are not embraced within its scope may be established by parol.

2.   Evidence examined, and *held* to support the findings.

3.   The findings examined and found to support the judgment.

APPEAL from the District Court of the Eight Judicial District for Kootenai County.   Hon. R. N. Dunn, Judge.

Action to cancel a contract and permit its forfeiture and the retention of payments made under said contract.   Judgment for plaintiff.   *Affirmed.*

McFarland & McFarland, for Appellants.

"In the absence of fraud or mistake, parol evidence as to what the parties said before making an unambiguous contract is inadmissible to affect it."   (*Van Sant v. Runyon,* 19 Ky. Law Rep. 1981, 44 S. W. 949; *Sims v. Greenfield & N. R. Co.,* 102 Mo. App. 29, 74 S. W. 421; *Cotton States Bldg. Co. v. Rawlins* (Tex. Civ. App.), 62 S. W. 805; *Coman v. Wunderlich,* 122 Wis. 138, 99 N. W. 612; *Tyson v. Neill,* 8 Ida. 603, 70 Pac. 790.)

"It is an elementary principle that all prior oral agreements merge into the written agreement."   (*Morehead v. Davis,* 13 Okl. 166, 73 Pac. 1103.)

"Principle and policy both forbid that written instruments made by the authority of law or by the contract of parties should be subject to be impeached, contradicted or annulled by loose, collateral parol testimony."   (*Cain v. Flynn,* 4 Dana (Ky.), 499; *Warren Glassworks v. Keystone Coal Co.,* 65 Md. 547, 5 Atl. 253.)

Black & Wernette, for Respondent.

Parol evidence may be admitted when the writing is incomplete.   (Jones on Evidence, Ed. de Luxe, sec. 440; *Morton v. Clark,* 181 Mass. 134, 63 N. E. 409; *Russell v. Pittsburg, N. E. & C. Ry. Co.,* 17 Pa. Super. Ct. 195; *Pratt & Co. v. Frasier & Co.,* 72 S. C. 368, 51 S. E. 983; *Sivers v. Sivers,* 97 Cal. 518, 32 Pac. 571; *Guidery v. Green,* 95 Cal. 630, 30 Pac. 786; *Sav-*

*ings Bank v. Asbury,* 117 Cal. 96, 48 Pac. 1081; *Pierce v. Edwards,* 150 Cal. 650, 89 Pac. 600; Jones on Evidence, 2d ed., sec. 440, p. 553, and cases cited.)

STEWART, J.—Ada E. Jarrett instituted this suit against D. D. Prosser and Mary Prosser, his wife, in the district court of Kootenai county, this state. The action was brought for the purpose of having a certain written contract, dated August 16, 1910, made between the respondent and the appellants, declared forfeited.

The action is based upon the following provisions of the contract:

"Witnesseth, That if the parties of the second part shall first make the payments and perform the covenants hereafter mentioned on their part to be performed, the said parties of the first part hereby covenant and agree to convey to the said parties of the second part in fee simple, free and clear of all encumbrances whatever by a good and sufficient warranty deed, the following described parcels of land situated in the county of Kootenai, state of Idaho, and known and described as follows: All that part of lot ten (10); sec. thirty-three (33), twp. forty-nine (49), N. Range one (1) W. B. M.; and all that part of lots three and five in section four (4) twp. forty-eight (48) N. range one (1) W. B. M. and lying west of the county road as now surveyed through said lots ten, three and five above mentioned and consisting of 64 acres, more or less; except and reserving therefrom one acre of land in lot three above mentioned, on which the schoolhouse now stands, said reservation to continue so long as said land is used for school purposes.

"And said parties of the second part hereby covenant and agree to pay to said parties of the first part therefor the sum of $3,600 in the manner following: $700 on the signing and delivering of this contract, and the further sum of $500 or more on the 16th day of August of each and every year hereafter until the balance of $2,900 shall have been fully paid, with interest at the rate of 6% per annum to be paid semi-annually on the balance remaining unpaid.

"Said parties of the second part further agree to pay all taxes and assessments that may legally be levied or imposed upon said land subsequent to the year 1910, it being hereby agreed that said first party shall pay the taxes on said land for the year 1910.

"And it is further agreed between the parties hereto that said first party shall, on or before the 1st of December, 1912, at the option of said second parties, give to said second parties a warranty deed of the land herein described, free from all encumbrances, and accept a mortgage from the said second parties on said land for any balance remaining unpaid under this contract.

"And it is further agreed between the parties hereto that if said second parties shall not desire or call for a deed of said premises with a mortgage back as in the paragraph above specified that said first parties shall procure, on or before the 1st day of December, 1912, a release of a certain mortgage, for $3,600 covering the premises herein described with other lands of said first parties, so far as the same shall cover the land herein mentioned.

"And it is further agreed that said second parties shall keep the dwelling house on the land herein described insured in the sum of $500 in some reliable insurance company, in favor of the first parties, during the life of the contract; and that they will, at all times, keep said lands and premises in good repair.

"And it is further covenanted and agreed between the parties hereto that time is, and shall be, of the essence of this contract; and in case of a default or failure of said parties of the second part to make the payments or any part thereof, or to perform any of the covenants on their part to be performed, this contract shall, at the option of the parties of the first part, be forfeited, and said parties of the first part may re-enter said premises and repossess the same and retain any, and all, payments made on this contract as liquidated damages for the non-performance of this contract.

"And it is further agreed between the parties hereto that the covenants and agreements contained shall extend to and

be obligatory upon the heirs, executors, administrators and assigns of the respective parties thereto.''

The complaint alleges compliance with all the terms of the contract and noncompliance on the part of the defendants in the failure to pay $500 on August 16, 1911, or since that time; that the plaintiff has at all times been able to comply, and has complied, with all the terms of said written contract. The relief asked is, the right to re-enter the premises and that the defendants deliver up the possession of the property, and that plaintiff be declared to have the right to retain all payments made under said contract according to the terms of the contract, as liquidated damages for the nonperformance of the contract.

The defendants filed an answer and admitted the making of the contract of August 16, 1910, and denied plaintiff's compliance with the terms of the contract, and denied that the defendants had not complied with the terms of the contract, or that they did not pay the sum of $500, as provided for in the contract, on August 16th, 1911, or since that time, and denied that the plaintiff was able to comply, or has complied with any of the terms of the written contract; and as a further answer, and for affirmative relief, the defendants alleged affirmatively the execution of the contract, and that said contract was recorded on the records of Kootenai county on November 3, 1910, and that at the time that plaintiff and her husband entered into said agreement they were not in a position or able to give to defendants a clear title to the lands and premises, and that there were in full force and effect two certain mortgages against the lands and premises which then remained, and still remain, unpaid and unsatisfied, and that plaintiff and her husband could not convey a good and sufficient title to the premises without first liquidating and satisfying said mortgage; that at the time of the execution of said written contract and agreement the two mortgages remained of record in the office of the county recorder, one mortgage for the sum of $3,000 and the other for $600. These two mortgages are set forth in the answer.

It is also alleged in the answer that at the time of the execution of the contract of August 16, 1910, the defendants paid plaintiff $700, and since that time have also paid the taxes upon the lands and premises. It is then alleged that on or about September 11, 1911, the plaintiff and the defendants ascertained that plaintiff was not in possession or able to deliver a warranty deed conveying the premises, on account of the existence of the mortgages, and it was mutually agreed by and between the plaintiff and said defendants that instead of defendants making the payments to the plaintiff mentioned and specified in the contract, that the said defendants liquidate, pay and procure the satisfaction of said two mortgages, and that plaintiff should sign a memorandum of agreement and also a warranty deed conveying said property and premises to the defendants, and that said memorandum of agreement and said warranty deed should be, and the same were, placed in escrow in the Union Trust & Savings Bank of Spokane, Washington; that said memorandum of agreement, executed and signed by the plaintiff, is in words and figures as follows:

"Spokane, Washington, September 11th.
"To Union Trust & Savings Bank,
      "Spokane, Washington.

"You are hereby instructed to deliver to D. D. Prosser, Coeur d'Alene, Idaho, the papers enclosed within this envelope, to-wit: Warranty deed, Ada Jarrett to D. D. Prosser, free and clear of all encumbrance upon delivery to this bank of a copy of recorded release of a certain mortgage in the sum of $3,000, dated 12–28–08, due 12–1–1918, covering lot 10, sec. 33–49–1, and lots 3 and 5 sec. 4–48–1, and the NE¼ of sec. 4–48–1WBM, recorded book 8, page 379, December 29, 1908, also second mortgage in the sum of $600.

"These papers are left with you in escrow, and you are hereby released from any and all liability or claim whatsoever by receiving and delivering said papers.

                    "(Signed)    MRS. ADA E. JARRETT.
"Witness:
      "(Signed)    H. E. FRASER."

The warranty deed was placed in the envelope upon which this escrow agreement was written. This warranty deed was of the property described in the contract of August 16, 1910, and was executed by Mrs. Ada E. Jarrett and her husband.

It is also alleged that prior to the placing of these two documents in escrow the plaintiff caused to be paid $300 of the $600 mortgage. Then follow allegations that the property was described by mistake as being in Kootenai county, Washington, instead of Kootenai county, Idaho, and that.the deed should have been reformed. Allegations then follow that the defendants have in all respects complied with the escrow agreement and with all agreements entered into between the plaintiff and defendants, and intended to satisfy the two mortgages when they become due and payable and to take up the warranty deed and intended to keep the premises insured, as provided for in the agreement, and to perform every matter and thing specified in said memoranda of agreement to be kept and performed.

An answer was filed by plaintiff to the cross-complaint, in which the plaintiff denies that on or about September 11, 1911, said plaintiff and these defendants, discovering and ascertaining that plaintiff was not in possession of or able to deliver to defendants a warranty deed conveying to them said lands and premises on account of or by reason of said mortgages, it was mutually agreed by and between plaintiff and defendants that instead of defendants making the payments to plaintiff mentioned, that the defendants pay and procure the satisfaction of said two mortgages, and that plaintiff should sign a memorandum of agreement and also a warranty deed conveying said property to defendants, and that said memorandum of agreement and said warranty deed should be and the same were placed in escrow in the Union Trust & Savings Bank; and denies that the memorandum of agreement was as set forth in the cross-complaint, and admits that a warranty deed was left in escrow as set forth in said cross-complaint, but denies that the defendants are entitled to said deed, or to have the same delivered to them according to the agreement; and alleges the fact to be that on September 11,

1911, plaintiff agreed with the defendants that if the defendants could, within three weeks after said date of September 11, 1911, procure or raise the money in the amount sufficient to liquidate and pay and satisfy said two mortgages, that plaintiff, in order to have said mortgages immediately satisfied and released, and not be compelled to wait until said mortgages became due to have them satisfied and released, agreed with defendants that plaintiff would place a warranty deed to the lands and premises in escrow; and if the defendants could raise the amount within the time, three weeks after September 11, 1911, as agreed upon, and release and satisfy said two mortgages, and would procure the release of said mortgages, and present said releases and said mortgages to the escrow-holder of said deed within three weeks' time after September 11, 1911, that then the escrow-holder should deliver to the defendants the warranty deed; the fact is also alleged to be that there was no agreement of any kind that any memorandum of agreement be placed in escrow, and that the only agreement was, as heretofore stated, that if said defendants paid the two mortgages and filed the releases with the escrow-holder, that the deed was to be delivered to defendants; and upon such agreement the deed was prepared and placed in escrow, and the plaintiff signed her name on the envelope of escrow, and it was understood that she was simply directing by the writing on said envelope that in case the defendants released said two mortgages and presented to said escrow-holder the said releases within three weeks, that then the said escrow-holder should deliver said deed to defendants; and if said releases of mortgages were not so presented, that said deed was to be delivered back to the plaintiff.

It was also alleged affirmatively in said answer that plaintiff signed the escrow agreement without examining the same carefully, and overlooked the contents of the agreement as to whether it carried out the agreement made and did not know at that time that the escrow agreement did not contain that part of the agreement made as to the time of presenting the releases and satisfaction of the mortgages, and did not learn the same until some time thereafter; and alleges affirmatively

that it was understood and agreed that in order to entitle the appellants to a deed they were to satisfy the mortgages, and present to the escrow-holder the releases thereof within a period of three weeks after September 11, 1911; that there was no consideration passed between the parties for the making of said escrow agreement. The answer then contains allegations as to the forfeiture of said contract by failure on the part of the defendants to comply with the terms thereof, and the plaintiff's demand for possession of the property and for the return of the deed.

Upon these issues the cause was tried to the court, and findings of fact and conclusions of law were made by the trial court and judgment was rendered for the plaintiff.

The findings of fact in substance are that the land described in the complaint was owned by the plaintiff on August 16, 1910; that on that day the contract sued upon was executed by the plaintiff and the defendants; that at the time the contract was executed there was in full force and effect two mortgages against said land which were then unpaid, one of which had been partially paid, and at such time the plaintiff and her husband could have conveyed to the appellants a sufficient title to said premises; that at the time the contract was made, $700 was paid to the plaintiff on said contract according to the terms thereof, and since the contract was made the defendants have paid the taxes on said lands; that on September 11, 1911, the plaintiff and the defendants mutually agreed that if the defendants would liquidate, pay and procure the satisfaction of the two mortgages within a period of about three weeks after September 11, 1911, plaintiff would give the defendants a warranty deed to said property mentioned in the contract, and would sign an escrow memorandum and also a warranty deed conveying said property and premises to defendants, and that said warranty deed should be placed in escrow in the Union Trust & Savings Bank of Spokane, Washington, so that when the defendants within said three weeks, as agreed upon, procured the satisfaction and release of said two mortgages and delivered said releases to the escrow-holder, the Union Trust & Savings Bank

of Spokane, then said escrow-holder could deliver said warranty deed so placed in escrow to these defendants, in case they had liquidated, paid and procured the satisfaction of said two mortgages within said three weeks' time from September 11, 1911, as agreed upon; and that after said agreement was made plaintiff signed a warranty deed to said property which deed was placed in escrow in the bank and the escrow agreement was made.

The court further finds that the defendants did not within the time agreed upon, three weeks after September 11, 1911, or at any time since, up to the time of the trial of the action, comply with or attempt to comply with their said agreement, which was that said defendants would liquidate, pay and procure the satisfaction and release of the two mortgages, and take up the deed which was placed in escrow; that prior to the placing of the deed in escrow the plaintiff and her husband paid $300 of the $600 mortgage, according to the provisions of the note, and received a receipt therefor; that the defendants have not in any respect complied with the escrow memorandum and with the agreement which was entered into by the plaintiff and the defendants as to the time in which the defendants should liquidate, pay and procure the satisfaction of the mortgages, and that the defendants are in default in not complying with said escrow memorandum and with said agreement.

The court further finds that by the provisions of the notes and mortgages which defendants agreed to have released and satisfied, there was interest due on said notes and mortgages on December 1, 1911, and that defendants have not at any time paid said interest or caused the same to be paid up to the time of the trial of the action; the court further finds that the agreement between plaintiff and defendants as to the liquidation, payment and satisfaction and release within three weeks after September 11, 1911, of the mortgages was a separate and distinct agreement between the parties and did not nullify or become a substitute for the written agreement between plaintiff and defendants dated August 16, 1910; that the defendants were in default and failed to comply with the

terms of the written agreement dated August 16, 1910, in this, that they failed to comply with that part of the contract which provides that defendants should pay to the plaintiff the sum of $500 or more on the 16th day of August of each year following the date of the execution, the first payment to be made August 16, 1911, and that defendants failed to make said payment of $500 at said time or at any time, and have not paid the same; that time was the essence of the contract, and in the contract it was provided that in case of default or failure of the parties to make the payments or any part thereof or perform any of the covenants on their part to be performed, the contract at the option of the parties of the first part was to be forfeited, and that the contract provided that the parties of the first part might re-enter the premises and repossess the same, and retain any and all payments made under the contract as liquidated damages for the nonperformance of the contract; that the payment of $500 was not made on August 16, 1911, as required by the contract.

As conclusions of law the court found that the agreement made between the plaintiff and the defendants that defendants would, within about three weeks after September 11, 1911, liquidate, pay and procure the satisfaction and releases of the two mortgages described above in these findings, and deliver said releases or copies thereof to the Union Trust & Savings Bank of Spokane, Washington, and take up a warranty deed which was placed there in escrow by plaintiff, did not supersede or become a substitute for or nullify the written agreement dated August 16, 1910, but was a separate and distinct agreement between the parties; that plaintiff exercised her option to forfeit said written contract dated August 16, 1910, and that plaintiff is entitled to have said written contract forfeited according to its terms, and that plaintiff is entitled to a decree giving her the right to re-enter said premises and take possession of and repossess the same; that plaintiff is entitled to judgment compelling defendants to deliver up the possession of the premises described in the contract of August 16, 1910, and giving her the right to retain any and all payments made to her on said above-described

property by the defendants according to the terms of the written contract.

Judgment was rendered accordingly. A motion for a new trial was made and overruled. The appeal is from the judgment and from the order denying the motion for a new trial.

It is apparent, as disclosed by the record in this case, that the respondent and appellants entered into a contract on August 16, 1910, wherein the respondent and her husband agreed to convey to appellants certain real property described in the complaint, upon the payment of the sum of $3,600, the payments to be made as follows: Seven hundred dollars to be paid upon the signing and delivering of the contract, and the further sum of $500 on the 16th day of August of each year thereafter, with interest at the rate of six per cent per annum to be paid semi-annually on the balance remaining unpaid. The appellants also agreed to pay all taxes subsequent to the year 1910. It was also agreed that on December 1, 1912, at the option of the said parties of the second part, the respondent and her husband would give to appellants a warranty deed to the said land, free from all encumbrances, and accept a mortgage from appellants for any balance remaining unpaid under the contract. It was also further provided in the contract that if the appellant did not exercise the option as above stated, then the first parties, on or before December 1, 1912, would procure the release of a certain mortgage covering the premises, the mortgage being for the amount of $3,600, and that the buildings would be insured for the sum of $500 in favor of the respondent. It was provided in said contract that if the appellants failed to make the payments at the time and in the manner therein specified, the contract would be, at the option of the respondent and her husband, forfeited, and the appellants would lose as liquidated damages the sums of money paid thereunder. It seems as though the conditions of the contract as to payments and the ability of the respondent to make the conveyance of a clear title under the terms of the contract were not complied with upon the part of either party, and the parties negotiated together and finally made an additional contract whereby the contract

was changed, and it was mutually agreed between them that instead of the appellants making the payments to the respondent, specified in the contract, the appellants would liquidate, pay and procure the satisfaction of the outstanding mortgages, and that the respondent would sign a memorandum agreement and also a warranty deed conveying the premises to the Prossers, and that the deed and agreement should be placed in escrow in the Union Trust & Savings Bank at Spokane, and that the same was, according to agreement, placed in escrow in the bank, and in such agreement it was provided that the warranty deed from Jarrett to Prosser, free and clear from encumbrances, should be delivered to Prosser upon the delivery to the bank of a copy of a recorded release of a "certain mortgage in the sum of $3,000, dated 12–28–08, due 12–1–1918," (describing the property) ; and also a second mortgage in the sum of $600; that such papers were left with the bank in escrow, and the bank released from any liability or claim whatsoever by receiving and delivering the papers.

The escrow agreement, under which such papers were deposited, did not include the entire agreement entered into by the parties at the time, and as found by the trial court. It omitted the agreement of the parties that such release should be procured within two or three weeks, and this mistake was overlooked by the respondent when she signed such memorandum. It appears, also, that the appellants did not comply with the agreement thus made, and the satisfaction of the mortgage of $3,000 mentioned in the escrow agreement was not secured and deposited with the bank. Because of such fact the respondent declared a forfeiture of said contract and brought this action for the purpose of foreclosing said contract and having it declared forfeited, and for the restoration of the possession and ownership of said property, and the damages provided for in said contract.

The first and second errors assigned are, that the court erred in the admission of certain oral testimony with reference to the escrow agreement dated September 11, 1911, and referred to in the answer and cross-complaint and in the findings of the court. It is the contention of the appellants that

this memorandum being in writing and complete in itself cannot be contradicted, changed or enlarged by parol evidence, except on the ground of fraud or mutual mistake, and that the evidence objected to was offered and received for the purpose of changing and enlarging the memorandum of agreement. Respondent, however, contends that such evidence does not tend to change and vary the terms, conditions and contents of the escrow agreement in any way whatever, but does contend that the escrow agreement is incomplete and did not contain the real agreement entered into by the parties, and that the oral testimony offered and received was a part of the real contract made and in no way altered the escrow agreement.

It may be conceded, as contended for by appellants, that where parties have entered into a contract or agreement which has been reduced to writing, in the absence of fraud or mistake, if the writing is complete upon its face and unambiguous, parol evidence is not admissible to contradict, vary, alter, add to or detract from the terms of the instrument. This is a universal rule of law, but this rule does not apply where it appears from the evidence that the agreement was a mere informal memorandum, manifestly incomplete on its face and not intended by the parties to exhibit the whole agreement, but merely to define some of its terms; the writing is conclusive as far as it goes, but such parts of the actual agreement as are not embraced within its scope may be established by parol, and where it appears from the writing itself that it is not complete, parol evidence may supply the omission. (Jones on Evidence (Ed. de Luxe), sec. 440, p. 533; *Morton v. Clark,* 181 Mass. 134, 63 N. E. 409; *Russell v. Pittsburg N. I. & C. R. Co.,* 17 Pa. Super. Ct. 195; *Pratt & Co. v. Frasier & Co.,* 72 S. C. 368, 51 S. E. 983; *Sivers v. Sivers et al.,* 97 Cal. 518, 32 Pac. 571.)

It is also argued that the court erred in making his findings.

The escrow agreement dated September 11, 1911, discloses upon its face that the placing of the deed in escrow is only one part of the agreement made by the parties with reference

to the appellants' assuming and paying the mortgages and obtaining the release and obtaining the deed therefor, and such agreement omits the time that the appellants were to pay and release the mortgages which covered the property of the respondent and clear her property which was covered by the mortgages, and release her from the responsibility of keeping up the interest on said mortgages and collecting the payments due on the contract each year from the appellants. This phase or condition of the contract is clearly set forth in the answer and cross-complaint, and the trial court found that such contract was made. From all the facts in this case it is clear that the same was omitted from the escrow memorandum by mutual mistake, and this mistake was wilful on the part of the appellants or the scrivener who wrote the memorandum, and overlooked by the respondent.

The trial court found that the escrow agreement of September 11, 1911, was a part of the agreement between the plaintiff and defendants whereby it was agreed that the defendants would liquidate, pay and procure the satisfaction and release of the said two mortgages within three weeks after September 11, 1911; and that such agreement was a separate and distinct agreement between the parties and did not nullify or become a substitute for said written agreement between the plaintiff and the defendants dated August 16, 1910. This finding of the trial court is supported by the evidence that it does not in any way alter or change the original agreement between the parties, but simply changed the agreement of August 16, 1910, in the obligations to be performed by the respective parties in the payment of the mortgages against the land and the delivery of the deed; and the court having found the defendants were in default and had failed to comply with such agreement, this agreement clearly supports and justifies the findings and judgment of the trial court when considered with the other findings made by the trial court.

A number of errors are assigned addressed to the separate findings made by the trial court upon the ground that the evidence does not support the findings. Upon an examination of the evidence we are satisfied that each of the findings made

by the trial court is supported by the evidence, and that there was no error in the admission of evidence which supports such findings.

The judgment is *affirmed.*    Costs awarded to the respondent.

Sullivan, J., concurs.