## No. 13,753.

BRENNAN *v.* MONSON, PUBLIC TRUSTEE ET AL.

(50 P. [2d] 534)

Decided October 7, 1935.

Mr. B. F. REED, for plaintiff in error.

Mr. CHARLES A. HASKELL, for defendant in error Richardson.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE parties appear here in the same order as in the lower court and will be designated as plaintiff and defendant, or by name.

The real estate involved in this action was originally the property of one Brown and wife, who on March 15, 1926, executed their promissory note in the principal sum of $2,000, payable to the order of Mary R. Nevitt, and to secure payment of the same they gave a deed of trust on the real estate. The property was purchased by the plaintiff, Martin D. Brennan, in 1928. Payment of the note was extended to the 15th day of March, 1932, and on or about April 10, 1932, an agreement was entered into between the plaintiff, Brennan, and Mary R. Nevitt, extending payment of the note to the 15th day of March, 1935. The last extension, so far as material to a consideration of the issues herein involved, was as follows: "Know all men by these presents, that whereas, there was recorded on the 16th day of March, A. D. 1926, in Book 3859 at Page 455 of the records in the office of the County Clerk and Recorder of the City and County of Denver, in the State of Colorado, a Trust Deed dated the 15th day of March, A. D. 1926, executed and delivered by Alvin Brown & Susan J. Brown to secure to Mary R. Nevitt the payment of an indebtedness described in said instrument described creating a lien upon the following described property in said City and County of Denver, to-wit: (description of property).

"And, whereas, eighteen hundred and no/100 Dollars of said indebtedness remains unpaid, with interest paid to March 15th, 1932, and, whereas, Martin D. Brennen is the legal owner of said property, and whereas, Mary R. Nevitt is the legal holder of said indebtedness above referred to, and, whereas, the parties hereto desire to agree upon an extension of the time of payment of said indebtedness,

"Now, therefore, for valuable consideration, it is hereby agreed that the time of payment of said indebtedness is hereby extended to the 15th day of March, A.

D. 1935, subject to all terms of said note and the lien securing same except No exceptions, and the notice and lien created by said instrument in writing is hereby renewed and continued in full force and effect.

"In consideration of the granting of said extension Martin D. Brennen, the legal owner of said property, hereby agrees to be personally liable for the payment of said indebtedness, and all interest and charges thereon, and do agree that all terms of the lien securing the payment thereof shall remain in full force and effect until said indebtedness is paid in full.

"Martin D. Brennan.
"Mary R. Nevitt."

The foregoing instrument was duly acknowledged by both parties thereto and duly recorded.

Prior to the institution of this suit, the defendant, Margaret N. Richardson, acquired said promissory note. No point is made that she is a holder in due course, or that she took it in reliance on the written extension agreement. We shall, therefore, determine this matter as though the controversy were between Brennan and Mary R. Nevitt, the original payee of the note.

On the 27th day of March, 1934, the defendant, Richardson, made demand upon the defendant, Monson, as public trustee, for foreclosure of the aforesaid deed of trust, alleging as defaults, failure to pay the interest due September 15, 1933, December 15, 1933, March 15, 1934, and taxes for the year 1932, due and payable in the year 1933. Plaintiff brought this action to enjoin the foreclosure of said deed of trust alleging that the interest payments and the taxes alleged to be in default had been paid by the plaintiff, and that plaintiff was not in default under the terms of the note or trust deed. Defendant Richardson denied the payments of the interest and taxes and set out the foregoing written agreement of extension. On trial to the court, in addition to the facts admitted in the pleadings, which so far as here material were the execution of the note, the transfer of the prop-

erty and the extension agreements, the following stipulation was entered into: "It is stipulated and agreed by the respective parties, by their counsel, that the payments which the plaintiff offers to prove to show that no default existed at the time of foreclosure, namely, March 27, 1934, are payments alleged to have been made prior to April 2, 1932, the date of the extension agreement set forth and admitted in the pleadings, which if paid and credited would have paid interest on this note in question beyond March 15, 1932, and caused a credit on interest payments beyond that date which would show that no default existed as to the payments alleged as defaulted in the complaint, [here were set forth the alleged defaults on which foreclosure was demanded of the public trustee]; and further that the payments actually made by the plaintiff subsequent to April 2, 1932, are not sufficient to take care of the interest and tax payments alleged to have accrued subsequent to March 15, 1932."

The plaintiff then rested his case and defendant moved for judgment on the admitted and stipulated facts. The court sustained the motion on the ground that to admit the proof offered by the plaintiff would be to contradict, add to, and vary by contemporaneous parol testimony, the terms of the written contract of extension.

The defendant contended that the following portion of the written agreement: "and, whereas, eighteen hundred and no/100 Dollars of said indebtedness remains unpaid, with interest paid to March 15th, 1932," and "in consideration of the granting of said extension Martin D. Brennan * * * hereby agrees to be personally liable for the payment of said indebtedness, and all interest and charges thereon;" constituted an agreement between the parties that the interest had been paid *only* to March 15, 1932, and that under the parol evidence rule plaintiff was barred from showing by parol testimony that payments had been made prior to the date of the execution of the extension agreement more than sufficient to pay the interest and taxes alleged to be in default at the

time foreclosure was instituted. The defendant further contended that the foregoing portion of the contract was in the nature of an account stated between the parties. The plaintiff contended that the "whereas" clause was merely a recital of a fact, was in the nature of a receipt, and constituted merely the reason for entering into the contract, the gist of the contract being the extension of the note.

It is too well settled to require citation of authorities that contemporaneous parol testimony is not admissible to contradict, add to or vary the terms of a written contract, but, as was well said by Mr. Justice Butler in *Creek v. Lebo Co.*, 85 Colo. 357 (276 Pac. 329), at 360: "The rule, of course, is well-established; but it is not always easy to determine when the rule should be applied. Wigmore, in section 2430 of his work on Evidence, says:

" 'The inquiry is whether the writing was intended to cover a certain subject of negotiation; for if it was not, then the writing does not embody the transaction on that subject. * * * Whether a particular subject of negotiation is embodied by the writing depends wholly upon the intent of the parties thereto. * * * This intent must be sought * * * in the conduct and language of the parties and the surrounding circumstances. * * * The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered. * * * In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation.' "

In this case we are not advised by the record as to any of the circumstances surrounding the making of the extension agreement. We must ascertain from the writing itself what was intended by it. We cannot by judicial construction contradict, add to or vary its terms. As was stated in the case of *Buchhalter v. Myers,* 85 Colo. 419 (276 Pac. 972), at 436: "Courts should not make new contracts for parties. It would result in filching the property or property rights from one man, and donating them to another." We must take the contract as we find it and discover from it the intention of the parties and the extent to which they by apt expressions have bound themselves.

Counsel for plaintiff says the statement, "Whereas, eighteen hundred and no/100 dollars of said indebtedness remains unpaid, with interest paid to March 15th, 1932," is but the recital of a fact—of a reason or motive for making the real contract which is to extend the due date of the note for three years more. If such is the true meaning, then the expression amounts to no more than a statement of the payee's motive for entering into the contract of extension, and where an agreement is lawful and a party capable of contracting, courts ordinarily are not concerned with the motives that prompted entering into the contract. Let us assume, however, (though we need not and do not decide it to be the proper construction) that the foregoing words will bear a construction such as is contended for by the defendant. If we give them such a construction they must be understood to mean the same thing as if the statement were in the following words: "It is understood and agreed that the interest is paid to March 15, 1932, and in reliance upon such understanding and agreement the payee extends the note for three years." Even so, the defendant could not logically invoke the parol evidence rule. The offered proof did not tend in the slightest to vary the terms of the agreement, that the interest was paid to the specified date. Such proof would not have imposed the slightest

additional obligation on defendant. It would have left all that the contract specified as the motive for its execution, if we accept plaintiff's contention, or as a condition of its execution, if we accept the defendant's contention. For all we can determine from the record the parties may have been in agreement that the interest was paid to March 15, 1932, and that fact may have been sufficient reason to induce the payee of the note to make the extension, though at the same time there may have. been, from all the record shows, a dispute as to whether other payments to the payee were on account of the note and interest or on some other transaction between the parties, even then in process of litigation, that would determine the application of such payments. To construe the words "Whereas, Eighteen Hundred * * * Dollars * * * remains unpaid, with interest paid to March 15th, 1932," as if they were written "Whereas Eighteen Hundred Dollars * * * remains unpaid, with interest paid *only* to March 15, 1932," would be to insert in the contract a provision that the parties themselves did not write into it. This would have to be done in order to invoke the parol evidence rule and prevent proof of payments made before the execution of the extension agreement. The court cannot by judicial construction so vary the plain terms of the contract as drawn by the parties.

We think it a reasonable construction of the extension agreement that as regards the obligation of the plaintiff to the payee and as regards the rights of the payee against the plaintiff it was the intention of the parties to put the plaintiff in the shoes of the original maker of the note. That being the purpose of the agreement, suppose the holder of the note had disregarded his security, or it had been destroyed and he had sued both the maker and Brennan, the one on the note and the other on the assumption agreement. Could such proof be refused? Certainly not. But if defendant's contention is correct, it could be refused in the same suit if offered by Brennan, who signed the assumption agreement. The result

of this would be that the holder of the note might obtain a judgment against the maker for one amount and against Brennan, who assumed its payment, for a greater amount. The payment of the lesser amount by the original maker would entitle him to a release of the judgment and would satisfy the lien of the note holder against the land. To permit then a recovery of the amount of the payments made by Brennan—who stepped into the shoes of the original obligor—on the note would be to permit pro tanto a double recovery on the same obligation. This is the logic of defendant's contention, and leads to an absurdity. It was error for the trial court to refuse the offer of proof.

The record, as pointed out, does not suggest even that defendant, Richardson, was a holder in due course. In the absence of such showing she is bound by any payments on the indebtedness whether made to her or to her predecessor in ownership of the note. In the present case, as a ground for enjoining foreclosure, plaintiff, Brennan, alleged payment and the evidence discloses that the payment was made to a former holder of the note. Unless defendant, Richardson, meets this with a showing that she is a holder in due course, plaintiff is entitled to an injunction enjoining the foreclosure. If due to the inaccurate manner in which Brennan plead payment, which inaccuracy we suggest should be corrected before another trial, defendant, Richardson, has been misled as to the necessity of meeting the allegation of payment with the plea that she is a holder in due course, if she is such, this is a matter which, on proper application, may be remedied by the trial judge. If defendant, Richardson, is not a holder in due course, then plaintiff is entitled to credits for such payments made to the former holder as he may be able to establish.

From the remarks of the trial court appearing in the record, it is apparent that he inclined to the view that this action was brought in an attempt to secure for the plaintiff possession of the property, trust deed upon

which was in process of foreclosure, for an additional period of time. The trial court has considerable latitude, in injunction cases, and if convinced, on consideration of a cause, that there are conditions with which plaintiff should comply in order that equity may be done between the parties, it is within its power to prescribe such conditions and to require compliance therewith. Defendant concedes this for he cites the case of *Andrews v. Connelly*, 145 Fed. 43 (Colo.), wherein the court held, as stated in the syllabus: "A court of equity, in granting relief to a complainant, may make it conditional on the doing of equity to defendant by paying a sum to which he is justly entitled, although he has filed no cross-bill therefor."

The judgment is reversed and the cause remanded to the district court for further proceedings, with leave to amend as the parties may be advised.

MR. CHIEF JUSTICE BUTLER, MR. JUSTICE CAMPBELL and MR. JUSTICE HILLIARD not participating.