## No. 16,459.

AMERICAN MINING COMPANY *v.* HIMROD-KIMBALL
MINES COMPANY ET AL.
(235 P. [2d] 804)

Decided August 27, 1951.   Rehearing denied September 17, 1951.

Mr. Carle Whitehead, Mr. Albert L. Vogl, for plaintiff in error.

Mr. Charles Oscar Erbaugh, Mr. John R. Wolff, for defendants in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the court.

PLAINTIFF in error, as plaintiff in the court below and hereinafter so designated, brought suit to obtain a decree of specific performance upon the instrument hereinafter set forth, or in the alternative, a money judgment for damages.

The instrument sued upon, and appearing in this proceeding as Exhibit A, is in the form of a letter bearing date May 1, 1947. Plaintiff claims thereunder as assignee of G. C. Ridland. From the record it appears that plaintiff was not in existence on May 1, 1947, but was incorporated shortly thereafter. Said instrument, Exhibit A, is as follows:

"1022 Colorado
Idaho Springs, Colorado
May 1, 1947

"Dr. G. C. Ridland
130 West High Street
Somerville, N. J.

"This is to confirm our conversation that the Himrod-Kimball Mines Company shall grant to you and your associates a Lease and Bond on its Old Town mining property situated in the Russell Mining District, Gilpin County, under the following conditions:

"1. Royalty on all ores mined and sold to be as follows:

"10% of the net returns on ores up to $40.00 in value

"15% of the net returns on ores over $40.00 and up to $60.00

"20% of the net returns on ores over $60.00.

"2. You are to guarantee the Company a minimum yearly royalty of $1000 and if royalties in each year do not amount to this sum, you are to pay the company the difference.

"3. All royalty and additional payments to the Company will apply on the purchase price.

"4. The purchase price will be $75,000.

"5. The agreement to run for a period of 5 years and if royalty and other payments during this period amount to $20,000 or more, the agreement will be renewed automatically for an additional 7 years.

"6. A $25,000 equity in the Lease and Bond to be reserved for the undersigned, George K. Kimball, for sums paid by him in recent years to keep the workings in good order and for taxes.

"7. Upon execution of the Lease and Bond, you will make an advance payment to George K. Kimball of $1000 on his equity in the agreement.

[number 8 crossed out]

"The undersigned hereby reserves this proposition for you for 15 days from this date, and upon payment to George K. Kimball of $100 before expiration of this 15 day period, he will extend the time another 20 days.

"Yours very truly,

Himrod-Kimball Mines Company

/s/ Geo K. Kimball

George K. Kimball, Pres.

"P. S. After payment of $1000 to George K. Kimball (see 7 above) his equity will be retired by a 50-50 split in operating profits."

It is the contention of plaintiff that Exhibit A is of and within itself a complete and unambiguous contract, sufficient for all purposes within the intent and objective of the parties, and, therefore, capable of specific performance, and that plaintiff is accordingly entitled to judgment so directing. In view of this position plaintiff asserts as its principal specification of error that the trial court was wrong in receiving and considering evidence, the purpose or effect of which was in any way or manner to add to, vary or modify said contract (Exhibit A). The formal specification of error in this respect incorporates as subparagraphs a number of reasons in support of the general proposition, which, for present purposes, are not necessary to detail, but all of which were considered in our study of this general assignment.

■ ■ "In constructing a contract to give a lease, the controlling consideration is the intention of the parties to be collected from the whole instrument." 51 C.J.S., p. 792, §193. General rules of construction follow the foregoing quotation, among which is that which requires enforcement as written of an instrument complete, clear in its terms, and free from ambiguity. It then is said to express the intention of the parties, and strained construction must not be employed, nor extrinsic evidence permitted in modification thereof.

Counsel for plaintiff insist that all necessary requirements are here present, and that if there be details lacking, they are only such as are general and so usual in their nature that their presence will be implied. In support of this position they cite *Reno Club v. Young Investment Co.*, 64 Nev. 312, 182 P. (2d) 1011, and quote at considerable length therefrom. The Nevada court in that case held that the lease there under consideration contained all the requisite elements to constitute a complete agreement; that general and usual provisions ordinarily contained in such a lease might be implied, and granted specific performance.

■ In the Reno Club case, supra, the court set forth specifically what it considered to be the "essential terms" of a lease. This classification, however, we do not adopt, since it is entirely too restrictive. Our research discloses a lack of unanimity among decisions of courts of last resort as to what constitutes "essential terms" in contracts generally, and particularly in instruments executed as preliminaries to contracts therein specified to be executed later. In such instances, we adhere to that which we believe to be the better and most generally accepted rule, that the "essential terms" must, in each case, be determined from the intention of the parties as disclosed upon consideration of all surrounding facts and circumstances there prevailing.

The Nevada court, in the Reno Club case, in discussing the topic of further negotiations, said: "This presents a

question which has been much litigated, and concerning which there is some conflict in the authorities. The authorities very generally, we believe, adhere to the rule that when in the option agreement, or in the negotiations of the parties, there appears the intention that further negotiations shall be had as to the terms of the proposed lease,—that there remain questions as to terms and provisions yet to be settled in the future negotiations as contemplated, then and in that event, the proposed lease is incomplete and not yet sufficiently developed upon which to establish the basis of a decree of specific performance." (Pac. supra, 1019)

Furthermore, in the matter now before us, an analysis of Exhibit A discloses that even the limited "essential elements" as defined in the Reno Club case are not all clearly present. For instance:

(1) The names of all parties are not given specifically. It is addressed to Dr. J. C. Ridland, but is to grant to "you and your associates." The associates are unnamed.

(2) The percentages of rental, or royalties, are named, but the method of calculation is not stated. The purchase price is specific in amount, but, aside from the first payment, the instrument is wholly silent as to time or manner of payment of either rental or purchase price. It clearly shows its incompleteness, not only with respect to these things, but likewise in regard to other features which must from their very nature have been in the contemplation of the parties at that time, and intended to be specifically worked out in detail in later further conferences.

As in all cases where the issue of completed contract vel non arises, "Whether or not the parties have completed their negotiations, or whether they designed that their agreement should be expressed in a formal written contract, is always dependent upon the circumstances of the particular case." *Pierce v. Marland Oil Co.*, 86 Colo. 59, 65, 278 Pac. 804.

Equity will not decree specific performance of

a contract uncertain in its terms, and "No criterion can be formulated which shall be a test of certainty in every instance. As a general proposition * * * the terms of a contract must be expressed with reasonable certainty, and what is reasonable in any case must depend on the subject matter of the agreement, the purpose for which it was entered into, the situation and relations of the parties, and the circumstances under which it was made." *Mestas v. Martini,* 113 Colo. 108, 118, 155 P. (2d) 161, quoting with approval from Pomeroy's Specific Performance of Contracts, (3d ed.).

In the instant case there is involved a mining lease with option to purchase, commonly referred to among mining men as a Lease and Bond, involving property, supposedly of $75,000 valuation. Leases and options of such nature are usually variable as to form, depending upon existing conditions. They ordinarily contain certain specific provisions applicable exclusively to the property covered thereby. Sometimes they are intended and designed for purely speculative purposes; in other instances the prime objective sought is development and production.

As a general rule, and especially in complicated mining and industrial transactions involving leases and similar contracts, where the document is not sufficiently clear, certain and positive in its terms that the court may not by reading it visualize exactly what was within the minds and contemplation of the parties thereto at the time of its execution, specific performance will not be decreed. *Bowman v. Reyburn,* 115 Colo. 82, 91, 170 P. (2d) 271; *Smith v. Des Marteau,* 119 Colo. 16, 28-29, 199 P. (2d) 1006. To indulge in implication or presumption requires reading into the agreement and adding thereto conditions, terms and stipulations upon which the parties have reached no definite understanding, and upon which their minds have not met and possibly could never meet. *Peer v. Hughes,* 25 Ariz. 105, 213 Pac. 691; *Kerr Glass Mfg. Corp. v. Elizabeth Arden Sales Corp.,* 61 Cal. App.

(2d) 55, 141 P. (2d) 938; *Grow v. Davis,* 110 Kan. 214, 203 Pac. 683; *Reeves v. Littlefield,* 101 Mont. 482, 54 P. (2d) 879; *Ladd v. Foster Investment Co.,* 40 F. (2d) 497 (10th Circuit).

In all of these last citations the facts recited therein seem much more favorable to appellants than is the situation of plaintiff here. We are convinced that here Exhibit A, other than with respect to the fixing of a definite price in event of purchase under the offer, was never intended by the parties to be final in any respect. On its face it appears manifest that further negotiations were required to work out important and essential terms and conditions of the formal lease and bond to be drafted later.

"The writing is conclusive as far as it goes; but such parts of the actual agreement as are not embraced within its scope may be established by parol, and, where it appears from the writing itself that it is not complete, parol evidence may supply the omission." *Jarrett v. Prosser,* 23 Idaho 382, 130 Pac. 376, 380. See, also, *Mulford v. Torrey Exploration Co.,* 45 Colo. 81, 88, 100 Pac. 596; *Brennan v. Monson,* 97 Colo. 448, 452; 50 P. (2d) 534; *Ball v. Wright,* 118 Colo. 410, 413, 414, 195 Pac. (2d) 739; 22 C.J., p. 1283, §§1715-1717.

In the instant case, considering that the instrument upon which the suit was brought was unilateral; its brevity, in view of the subject matter involved; its evident incompleteness; and all facts and circumstances surrounding the particular transaction; the trial court was fully justified in admitting parol evidence in order that the true intention of the parties be ascertained. From all the evidence thus received, the trial court determined that in fact no complete agreement had ever been reached. This conclusion, amply supported by admitted evidence, must stand.

Plaintiff's second specification is that the trial court erred in permitting defendants to call Ridland for "Cross-examination under the statute." In its brief the

statute is quoted. In passing it probably is well to again admonish that properly the witness should have been called pursuant to the provisions of rule 43 (b), R.C.P. Colo.

The principal complaint here is that as a part of this cross-examination Exhibit 5 was identified and offered; that the trial court in its findings referred to, and relied upon, said Exhibit 5; and thereby used the testimony of Ridland while on cross-examination "under the statute" to "destroy Exhibit A."

At the date of the execution and delivery of Exhibit A, plaintiff was not in existence. It was shortly thereafter organized with Ridland as one of its officers. Exhibit 5 is a draft of the proposed "Lease and Bond" agreement admittedly prepared by Ridland and submitted to Kimball on the 2nd day of June, 1947. At that time Ridland was an officer of the plaintiff corporation; he had been instrumental in its organization; and he had assigned to it the document designated as Exhibit A. Under cross-examination when first called as plaintiff's witness, he admitted that he had prepared, and on June 2, 1947, tendered to Kimball Exhibit 5. Later, when called on behalf of plaintiff in rebuttal, he testified at length on direct examination as to these matters, stating that he himself had prepared Exhibit 5 by copying it from other lease forms, and went into detail with respect to all of the matters to which objection is now made, and in which it is said the trial court committed error in compelling Ridland to testify upon being called as an agent or representative of the adverse party.

Where an adverse party fully develops, by his own examination of the same witness, evidentiary matter to which he had objected when the witness was called adversely by the other side of the case, he waives his previous objection by adopting the witness' statements and explanations, and an attempt to assign error under such circumstances will be unavailing. *London Guaranty & Accident Co. v. Officer,* 78 Colo. 441, 444, 242 Pac. 989.

In its judgment the trial court granted plaintiff damages in the sum of $250 upon which action defendants specify cross error under four specific headings, all of which may be considered together. In determining the amount of the damages the trial court divided same into two items: (1) The $100 admittedly paid by Ridland to Kimball for an extension of time within which to accept the option granted by Exhibit A; and (2) $150 damages by reason of expenses incurred by Ridland in making trips to Idaho Springs in his efforts to complete the transaction. The trial court erred in respect to both items.

Referring to Exhibit A, we see that the agreement, so far as it concerns the $100, was that said sum was to operate as consideration, not under the lease, but for an extension of time within which to accept the option. The first fifteen days were given without cash consideration, and upon payment "of $100 before the expiration of this 15 day period, the time might be extended another 20 days." Ridland, desiring more time, paid the $100 and received the extension. Even though incompleteness appears in the instrument upon which the suit is brought, and disagreement between the parties resulted in their failure to work out a mutually satisfactory lease, the controversial Exhibit A did, nevertheless, contain a definite offer and obligation to sell outright for cash, the acceptance of which would have operated as an enforceable contract for the sale of the property. To this extent, at least, the possessor of the option received value for his $100.

With regard to the remaining $150, in view of our foregoing findings and conclusions to the effect that no complete meeting of the minds of the parties to Exhibit A ever was effected, and that no contract resulted, there can be no recovery on this item as one may not recover damages for breach of a contract that never existed.

The judgment of the trial court, so far as it concerns

the plaintiff's complaint, is affirmed; but its judgment for damages in the sum of $250 for the plaintiff and against defendants is reversed, and the cause remanded with directions to vacate the same.

MR. JUSTICE HOLLAND dissents.